UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04 11676 PBS**

| | |
|---|---|
| **CHILDREN'S HOSPITAL CORPORATION,** Plaintiff, v. **KINDERCARE LEARNING CENTERS, INC., BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OREGON** Defendant. | MAGISTRATE JUDGE Cohen Civil Action No. RECEIPT # _____ AMOUNT $ _____ SUMMONS ISSUED _____ LOCAL RULE 4.1 _____ WAIVER FORM _____ MCF ISSUED _____ BY DPTY CLK _____ DATE _____ |

## NOTICE OF REMOVAL BY KINDERCARE

TO:   The Honorable Judges
      Of the United States District Court
      For the District of Massachusetts

Pursuant to 28 U.S.C. § 1331, 1446 and 29 U.S.C. § 1132(e), Defendant, Kindercare Learning Center ("defendant"), hereby removes this action from the Superior Court of Suffolk County, Commonwealth of Massachusetts, to this Court. The grounds for removal are:

1.   This is a civil action brought by the plaintiff, Children's Hospital Corporation (hereinafter "plaintiff"), in the Superior Court of Suffolk County, Commonwealth of Massachusetts (Civil Action No. 04-2959). Copies of the Summons and Complaint were served upon defendant on July 7, 2004. Copies are attached in accordance with 28 U.S.C. § 1446 (a).

2. Suffolk County, Massachusetts, the place where this action was originally filed, is within the geographic boundaries of the United States District Court for the District of Massachusetts. 28 U.S.C. § 101.

3. Defendant desires to exercise its rights under the provisions of 28 U.S.C. § 1441, et seq., to remove this action from the Superior Court of Suffolk County, Commonwealth of Massachusetts.

4. This action filed by plaintiff in state court is removable to this Court as an action over which the District Courts of the United States have been given original jurisdiction, in that the purported causes of action "relate to" an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. and are completely preempted. See Aetna Health, Inc. v. Davila, 592 U.S. __ Slip. Op. at 4-5 (2004).

5. Defendant Blue Cross Blue Shield of Massachusetts, Inc. and Regence Blue Cross Blue Shield of Oregon assent to, and join in, this petition for removal. Resident Advisory Board v. Tate, 329 F. Supp. 427 (E.D. PA 1971).

6. Defendant is filing this Notice of Removal within the time period prescribed by 28 U.S.C. § 1446.

7. Pursuant to 28 U.S.C. § 1446(d), defendant will promptly file this Notice of Removal with the Clerk, Superior Court of Suffolk County, Commonwealth of Massachusetts, 90 Devonshire Street, Boston, Massachusetts 02109.

# CIVIL ACTION COVER SHEET

DOCKET NO.(S) 04-2959-C

Superior Court Department
County: Suffolk

**PLAINTIFF(S)**
Children's Hospital Corporation

**DEFENDANT(S)**
Kindercare Learning Centers, Inc., Blue Cross & Blue Shield of Mass., Inc., and Regence Blue Cross Blue Shield of Oregon, I[n]

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
John D. Hanify, Theodore J. Folkman
Hanify & King, P.C., One Beacon St., Boston, MA, 02108
Board of Bar Overseers number: 219880

**ATTORNEY (if known)**
Robert P. Joy
Moran, Brown & Joy
One Boston Place, Boston, MA 02108

**Origin code and track designation**

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Breach of contract, fraud, and violation of 93A | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................. $..........
2. Total Doctor expenses ................................................. $..........
3. Total chiropractic expenses ............................................. $..........
4. Total physical therapy expenses ......................................... $..........
5. Total other expenses (describe) ......................................... $..........
   Subtotal $..........

B. Documented lost wages and compensation to date ............................ $..........
C. Documented property damages to date ...................................... $..........
D. Reasonably anticipated future medical and hospital expenses ............... $..........
E. Reasonably anticipated lost wages ........................................ $..........
F. Other documented items of damages (describe)
   $..........
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
   $..........
   TOTAL $..........

RECEIVED JUL 06 2004 SUPERIOR COURT - CIVIL MICHAEL JOSEPH DONOVAN CLERK / MAGISTRATE

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
The defendants induced the plaintiff to provide $1.08 million in medical care to a patient by fraudulently representing that she was insured. The plaintiff seeks treble damages under c. 93A.

TOTAL $.3,254,577.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules of Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 7/5/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 04-2959-C

Children's Hospital Corporation , Plaintiff(s)

v.

Kindercare Learning Centers, Inc.,
Blue Cross Blue Shield of Massachusetts, Inc. &
Regence Blue Cross Blue Shield of Oregon , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Theodore J. Folkman, Esq., of Hanify & King, Professional Corporation plaintiff's attorney, whose address is One Beacon St., Boston, MA 02108 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the 6th day of July , in the year of our Lord two thousand and four .

*Michael Joseph Donovan*
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

Superior Court Department
of the Trial Court

04-2959-C

CHILDREN'S HOSPITAL CORPORATION,

Plaintiff,

vs.

KINDERCARE LEARNING CENTERS, INC., BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OF OREGON,

Defendants

Civ. A. No.

## COMPLAINT
(Jury Trial Demanded)

### INTRODUCTION

Baby Girl D., a newborn with serious health problems, was admitted to Children's Hospital on the day after her birth. Baby Girl D's mother, Jane Doe, was an employee of Kindercare Learning Centers, Inc. ("Kindercare") and a participant in Kindercare's health plan, a plan self-insured by Kindercare and administered by Regence Blue Cross Blue Shield of Oregon. Upon Baby Girl D's admission to the hospital, and repeatedly thereafter, the Blue Cross defendants confirmed that Children's Hospital was authorized to treat her and that its services would be reimbursed. Notwithstanding these representations, Kindercare and the Blue Cross defendants have attempted to disqualify Baby Girl D retroactively, and Kindercare has actively frustrated Baby Girl D's parents' attempts to ensure coverage in order to reduce or eliminate Kindercare's financial exposure as a self-insurer. Children's Hospital seeks contractual damages,

RECEIVED
JUL 06 2004
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

actual damages for fraud and misrepresentation, trebled in accordance with G.L. c.93A, and attorneys' fees and costs.

## PARTIES

1. The plaintiff, Children's Hospital Corporation ("Children's Hospital"), is a not-for-profit, charitable Massachusetts corporation with its principal place of business at 300 Longwood Avenue, Boston, Massachusetts.

2. The defendant, Kindercare, is a Delaware corporation with its principal place of business at 650 NE Holladay Street, Suite 1400, Portland, Oregon.

3. The defendant, Blue Cross Blue Shield of Massachusetts, Inc. ("Blue Cross Massachusetts"), is a Massachusetts corporation with its principal place of business at 401 Park Drive, Boston, Massachusetts. The defendant, Regence Blue Cross Blue Shield of Oregon, Inc. ("Blue Cross Oregon"), is an Oregon corporation with its principal place of business at 100 SW Market Street, Portland, Oregon (together "the Blue Cross defendants").

## FACTS

### Kindercare, Blue Cross Oregon, and Blue Cross Massachusetts

4. The Blue Cross and Blue Shield Association is a national association of health plans. The Blue Cross defendants are two of its licensees.

5. Kindercare is the largest for-profit provider of early childhood education and care in the United States in terms of the number of centers and licensed capacity. Kindercare sponsors the Kindercare Learning Centers, Inc. Employee Benefit Plan ("the Plan"), which provides employee participants with health care benefits for themselves and their dependents. Although Blue Cross Oregon administers the Plan and acts as Kindercare's agent, Kindercare self-insures the cost of medical services secured under the auspices of the Blue Cross defendants.

2

6. On information and belief, the Blue Cross defendants are parties to a reciprocity agreement, which requires Blue Cross Massachusetts to facilitate provision of services to Blue Cross Oregon members.

7. Under its Hospital Services Agreement with Children's Hospital, Blue Cross Massachusetts promised to cover and reimburse plaintiff for urgent medical care given to out-of-state members of other Blue Cross licensees.

8. Kindercare employed Jane Doe, a resident of Connecticut, at one of its facilities in that state. Mrs. Doe was a participant in the Plan and was enrolled to receive for herself and her dependents health care benefits under the Plan. In late 2002, Mrs. Doe became pregnant and in May 2003, Mrs. Doe began her maternity leave from Kindercare.

9. Kindercare employees and dependents, specifically Mrs. Doe and her daughter, Baby Girl D., were entitled to receive coverage for hospital medical services at Children's Hospital.

10. At all times material to these allegations, the Blue Cross defendants had apparent authority and, on information and belief, actual authority to act as Kindercare's agents and to make representations to Children's Hospital confirming repeatedly the hospital's entitlement to be reimbursed for critical care services rendered to Baby Girl D. for such treatment through the Blue Cross network.

## Assurances of Blue Cross Defendants Regarding Coverage

11. Mrs. Doe's daughter, Baby Girl D., was born at Hartford Hospital on August 19, 2003. Baby Girl D. was born suffering from serious medical problems. On August 20, 2003, Baby Girl D. was transferred and admitted to Children's Hospital in emergent condition.

RECEIVED
JUL 06 2004
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

12. Upon her daughter's admission to Children's Hospital, Mrs. Doe accurately informed the hospital that she carried Blue Cross Oregon health insurance. On August 25, 2003, an employee or agent of the Blue Cross defendants informed Children's Hospital that Mrs. Doe's policy was "active."

13. From August 29 to September 8, Children's Hospital received several calls from employees of Blue Cross Oregon, including Carol Lloyd, its nurse case manager. Blue Cross Oregon sought information respecting the nature and extent of the care Baby Girl D. was receiving but did not suggest that there was any problem in providing coverage for Baby Girl D.

14. On September 11, 2003, Ms. Lloyd informed Children's Hospital by telephone that insurance coverage had been terminated. Later that day, Ms. Lloyd telephoned again and said that she had made an error in suggesting the insurance was terminated. She also requested that Children's Hospital continue sending periodic reports regarding Baby Girl D's care to Blue Cross Oregon.

15. On September 16, 2003, Leah Milano, Children's Hospital's Manager of Patient Accounting, spoke by telephone with a Blue Cross Oregon employee who identified herself as "Jennifer L." Jennifer L. again verified that Mrs. Doe was insured, effective August 19, 2003, and that Baby Girl D. was entitled to coverage for ongoing services. On the same day, Ms. Milano also spoke by telephone with a Blue Cross Oregon employee who identified herself as "Glenda." Glenda provided her with an authorization number effective for services provided from August 16 to September 17.

16. Such authorization numbers are routinely given to health care providers by insurers and confirm the existence of coverage.

17. On September 23, Carol Savard, a Children's Hospital employee, received a call from Ms. Lloyd, in which Ms. Lloyd again provided an authorization number in respect of Baby Girl D's care, confirming ongoing coverage and the Hospital's entitlement to reimbursement.

18. On November 12, 2003, Ms. Lloyd, speaking by telephone with an employee of Children's Hospital, reconfirmed the previous authorization for care provided through November 12, 2003.

19. On November 19, 2003, Ms. Lloyd, on behalf of the Blue Cross defendants, speaking by telephone with Terry Stone, a Children's Hospital employee, again provided an authorization number in respect of Baby Girl D's continuing care.

20. On or about December 1, 2003, the Blue Cross defendants incorrectly took the position for the first time that Mrs. Doe had other insurance coverage and, therefore, that she was not entitled to coverage for Baby Girl D. Lillian Hughes, on behalf of the Hospital, and Mrs. Doe together telephoned Blue Cross Oregon and spoke with Jessica, an employee in the member services department. After Mrs. Doe asserted that she was insured only through Blue Cross Oregon, Jessica confirmed that Mrs. Doe and Children's would have "no problem" in securing reimbursement for services.

21. On December 3, 2003, in another telephone call with a Children's Hospital employee, Ms. Lloyd again confirmed that Baby Girl D. was approved through December 3, 2003, for inpatient admission.

22. On December 15, 2003, Children's telephoned the pre-certification department at Blue Cross Oregon and spoke with an employee who identified herself as "Cassie." Cassie confirmed that Baby Girl D's care was authorized for the period from August 19 to December 9, 2003.

### Blue Cross Defendants' Treatment of Billing

23. On October 30, 2003, Children's Hospital transmitted a claim in the amount of $626,143.49 ("Claim 112") to Blue Cross Massachusetts. On November 19, 2003, Children's Hospital transmitted a claim in the amount of $280,775.11 ("Claim 113") to Blue Cross Massachusetts. On November 21, 2003, an employee of the Blue Cross defendants who identified herself as "Margaret" spoke with Children's by telephone and informed Children's that Claim 112 was "in process." She also requested an additional period of time within which to disburse payment to Children's.

24. Thereafter, Children's Hospital and Blue Cross Massachusetts communicated on at least two other occasions on December 2 and December 3, 2003 regarding the processing of Claims 112 and 113. At no time did the Blue Cross defendants ever provide any indication that these claims might not be paid.

### Kindercare's Second Thoughts About Coverage

25. The total cost of the inpatient services provided to Baby Girl D. at Children's Hospital was in excess of $1.08 million.

26. Blue Cross defendants requested updates on the charges incurred on several occasions, and Children's Hospital provided such updates as requested. In connection with planning for Baby Girl D's discharge, her physicians requested that she receive certain post-discharge services.

27. Children's Hospital transmitted the request for post-discharge services to Ms. Lloyd on December 1. Ms. Lloyd indicated she would review the request with Blue Cross Oregon's medical director.

28. On December 9, 2003, Ms. Lloyd requested that Mrs. Doe telephone Ruth Cusack. Ms. Cusack is the plan administrator of the Plan. Mrs. Doe requested that Maureen Holden, a Children's Hospital employee, make the call on her behalf. Ms. Holden placed the call in Mrs. Doe's presence, but Ms. Cusack refused to speak with Ms. Holden or to tell her the reason for the call.

29. On December 10, 2003, Mrs. Doe spoke with Ms. Cusack, who told her she needed to pay an overdue premium in the amount of $1,478 by December 18 in order to maintain her coverage after December 1.

30. On December 17, 2003, two Children's Hospital employees spoke separately with Blue Cross employees by telephone. At that time, the Blue Cross defendants reported for the first time to Children's Hospital that Baby Girl D's coverage had terminated, effective December 1.

31. On December 18, 2003, Children's Hospital, in further conversations with Ms. Cusack, learned that Kindercare had unilaterally decided to retroactively disenroll Baby Girl D to the beginning of her care, acknowledging that Kindercare had been aware of the asserted enrollment issues for a protracted period -- including during the periods in which Blue Cross continued to expressly authorize care -- although both Kindercare and Blue Cross had failed to disclose them. Ms. Cusack further insisted, on behalf of Kindercare, that Kindercare would require payment by check, and that the check would need to be received in hand by the close of that same business day, December 18.

32. Kindercare's offices are in Oregon, and it was impracticable if not impossible for Mrs. Doe to deliver a check to Oregon in a matter of hours, as Kindercare demanded. Mrs. Doe told Children's Hospital that she had a friend's permission to use the friend's credit card to pay

7

the premium, and that the friend would personally authorize the payment, but when the Hospital raised this possibility with Ms. Cusack, she refused to accept a credit card.

33. As a last resort, Children's Hospital offered to facilitate payment of the premium by wire. Again, Ms. Cusack refused.

34. Kindercare's insistence on receiving a check by the close of business was a pretext to avoid its obligation as a self-insurer to pay Children's Hospital for the services which it and the Blue Cross defendants had induced Children's to provide to Baby Girl D. Kindercare has since taken the position that because Mrs. Doe had not timely paid her premiums, it has no liability for services rendered by Children's for Baby Girl D. since her admission to the hospital in August 2003.

35. Children's Hospital has not received any payments from Kindercare, Blue Cross Oregon, or Blue Cross Massachusetts in respect of Baby Girl D's care, with the exception of a single payment that Blue Cross Massachusetts later recouped.

### Damages Suffered By Children's Hospital

36. Children's Hospital provided services worth in excess of $1.08 million in caring for Baby Girl D. Under the contract between Blue Cross Massachusetts and Children's Hospital, the Hospital was entitled to receive in excess of $586,816 for its services. This amount takes into account a contractually agreed discount off Children's regular charges.

37. Kindercare, however, is not a party to that contract, and because it induced the Hospital to care for Baby Girl D., it is liable for the entire amount.

COUNT ONE
Fraud
(Against Kindercare and Blue Cross Oregon)

38. The plaintiff incorporates the allegations of paragraphs 1 to 37.

8

39. Blue Cross Oregon, acting as agent for Kindercare and on its own account, and Kindercare falsely represented to Children's Hospital that Baby Girl D. was covered by her mother's health insurance. It made these representations repeatedly for the purpose of inducing the Hospital to care for Baby Girl D.

40. At the time Blue Cross Oregon made and participated in these false representations, the defendants knew that Mrs. Doe had not paid her premium, the only fact they later relied on in asserting that she was not covered. The defendants made such representations in order to induce Children's to provide medical services to Baby Girl D. Such representations were material to Children's decision to provide care to Baby Girl D., and the Hospital reasonably relied upon them in deciding to provide services.

### COUNT TWO
### Negligent Misrepresentation
### (Against Kindercare and Blue Cross Oregon)

41. The plaintiff incorporates the allegations of paragraphs 1 to 40.

42. The defendants, acting as agent or, in Kindercare's case, principal, supplied false information to Children's by stating, as alleged above, that Baby Girl D. was covered by her mother's insurance policy.

43. The defendants made or participated in the making of these misrepresentations in the course of their respective businesses, and Children's justifiably relied on the misrepresentations. In making such misrepresentations, the defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

44. As a result, Children's suffered substantial damage.

## COUNT THREE
### Promissory Estoppel
### (Against All Defendants)

45. The plaintiff incorporates the allegations of paragraphs 1 to 44.

46. The defendants' statements regarding Baby Girl D's coverage under Mrs. Doe's policy and their provision of authorization numbers were also promises to pay for services rendered.

47. Children's Hospital reasonably relied on these promises.

48. Children's Hospital incurred costs as a result of its reasonable reliance on the defendants promises.

## COUNT FOUR
### Breach of Contract
### (Against Blue Cross Defendants)

49. The plaintiff incorporates the allegations of paragraphs 1 to 48.

50. Blue Cross Massachusetts breached the Hospital Services Agreement by refusing to pay Children's Hospital for services rendered to Baby Girl D. before her enrollment was terminated, i.e., before December 18, 2003, in the amount of $586,816.

51. Blue Cross Massachusetts breached the Hospital Services Agreement by failing to use its best efforts "to limit all account retroactive Member disenrollment to thirty (30) days where possible," i.e., by failing to use its best efforts to ensure that Children's would be paid for services rendered to Baby Girl D. more than thirty days prior to the date on which it was determined that Mrs. Doe was retroactively disenrolled from the Plan.

52. Blue Cross Oregon is liable for these breaches of contract, because Blue Cross Massachusetts was acting as its agent and within the scope of its agency when it breached the contract.

10

53. As a direct and proximate result of these breaches, Children's Hospital has suffered injury.

## COUNT FIVE
### Account Annexed
### (Against Kindercare)

54. The plaintiff incorporates the allegations of paragraphs 1 to 53.

55. Kindercare is liable for the value of services rendered in accordance with the account annexed hereto in the total amount of $1,084,859.21. The account has been redacted to remove protected health information.

## COUNT SIX
### Violation of G.L. c. 93A, §§ 2 & 11
### (Against Kindercare and Blue Cross Oregon)

56. The plaintiff incorporates the allegations of paragraphs 1 to 55.

57. Kindercare, Blue Cross Oregon, and Children's Hospital are engaged in trade or commerce.

58. At all relevant times, Kindercare, and on information and belief, Blue Cross Oregon, knew that Mrs. Doe had not paid her premiums.

59. Although Ms. Cusack had the opportunity to speak by telephone or otherwise with employees of Children's Hospital on several occasions, and in fact did so at Baby Girl D's mother's request, Ms. Cusack deliberately never disclosed Mrs. Doe's failure to pay premiums to Children's Hospital until December 18, 2003.

60. Representatives of Blue Cross Oregon also spoke by telephone with employees of Children's Hospital on several occasions, again never disclosing Mrs. Doe's failure to pay premiums. Rather, Blue Cross Oregon repeatedly represented that the Hospital would be paid for the services it provided.

11

61. Blue Cross Oregon and Kindercare intentionally failed to disclose Mrs. Doe's failure to pay premiums for the purpose of inducing Children's Hospital to provide services.

62. On or about December 18, 2003, when Mrs. Doe offered to make the overdue premium payment, Kindercare intentionally obstructed such payment by asserting commercially unreasonable positions calculated to assure Mrs. Doe's default in order to relieve Kindercare of the obligation to pay Children's as a self-insurer.

63. Kindercare also overlooked Mrs. Doe's failure to make premium payments until it realized the substantial cost of Baby Girl D.'s care (which became apparent only after the care had been provided and Children's Hospital's costs incurred), at which point it looked for any pretext to avoid its obligations to Children's Hospital.

64. Kindercare's and Blue Cross Oregon's conduct was intentional, willful and calculated to cause Children's damage and loss.

65. As a proximate result of Kindercare's and Blue Cross Oregon's unfair and deceptive acts in trade or commerce, Children's Hospital has suffered damages in the amount of $1.08 million.

## DEMAND FOR JUDGMENT

Wherefore Children's Hospital demands judgment against the defendants for the following relief.

1. Damages in the amount of $586,816 from Blue Cross Massachusetts and Blue Cross Oregon, jointly and severally;

2. Damages in the amount of $1,084,859.21 from Kindercare;

3. Treble damages in the amount of $1,759,848 from Blue Cross Oregon and $3,254,577.63 from Kindercare;

4.  A reasonable attorney's fee; and

5.  Costs and prejudgment interest.

## DEMAND FOR TRIAL BY JURY

The plaintiff demands a trial by jury of all issues triable of right by a jury.

                            Respectfully submitted,

                            CHILDREN'S HOSPITAL
                            CORPORATION

                            By its attorneys:

                            *[signature]*
                            John D. Hanify (BBO No. 219880)
                            Theodore J. Folkman (BBO No. 647642)
                            HANIFY & KING, P.C.
                            One Beacon Street
                            Boston, Massachusetts 02108
                            (617) 423-0400

Dated: July 5, 2004

409630

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

Superior Court Department
of the Trial Court

CHILDREN'S HOSPITAL CORPORATION,

Plaintiff,

vs.

KINDERCARE LEARNING CENTERS, INC., BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OF OREGON,

Defendants

Civ. A. No. 04-2959-C

7-7-04
Allowed
(Cratsley, J.)
Attest:

## PLAINTIFF'S EX PARTE MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

Pursuant to Mass. R. Civ. P. 4(c), the plaintiff, Children's Hospital Corporation, moves for appointment of Dewsnap & Associates, P.O. Box 4538, Boston, Massachusetts 02101, and its agents as special process servers in this action for all purposes contemplated by that Rule. Service of process will be made by a disinterested person at least 18 years of age.

Respectfully submitted,

CHILDREN'S HOSPITAL CORP.

By its attorneys:

John D. Hanify (BBO No. 219880)
Theodore J. Folkman (BBO No. 647642)
HANIFY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400

Dated: July 7, 2004

409737

CHILDREN'S HOSPITAL
P.O. BOX D-3053
BOSTON, MA 02241
(617)355-6000

FED. TAX NO. 04-2774441    081903    122203    125

| REV. CD. | DESCRIPTION | HCPCS/RATES | SERV. DATE | SERV. UNITS | TOTAL CHARGES | NON-COVERED CHARGES | |
|---|---|---|---|---|---|---|---|
| 460 | PULMONARY FUNCTION | | | 001 | 104.00 | | |
| 480 | CARDIOLOGY | | | 043 | 27484.00 | | |
| 490 | AMBULATORY SURGERY | | | 013 | 43468.00 | | |
| 611 | MRI - BRAIN | | | 001 | 2526.72 | | |
| 750 | GASTRO-INTEST SVS | | | 001 | 353.33 | | |
| 983 | PROFEE - CLINIC | | | 001 | 43.67 | | |
| 001 | TOTAL CHARGES | | | | 1084859.21 | | |

PAYER: EOS
BLUE CROSS OF MASSACHUSE

TREATMENT AUTHORIZATION CODES: N/A

221213

PRIN. DIAG. CD: 7467    99859   42741   4275   7775   7793   4280   9971   99662    ADM. DIAG. CD: 7467    E-CODE: 105

3965   090103   35    090103   39    090103   MA52467   MAYER, JOHN E MD
39     090103   38    090103   39    090103

REMARKS: HYPOPLAS LEFT HEART SYND.

OCR/ORIGINAL    790-0208

```
CHILDREN'S HOSPITAL
P.O. BOX D-053
BOSTON, MA 02241
(617)355-6000
```

FED. TAX NO. 04-2774441  081903  122203  125

| REV. CD. | DESCRIPTION | HCPCS/RATES | SERV. DATE | SERV. UNITS | TOTAL CHARGES | NON-COVERED CHARGES |
|---|---|---|---|---|---|---|
| 120 | ROOM-BOARD/SEMI | 1562.00 | | 016 | 24992.00 | |
| 250 | PHARMACY | | | 686 | 169170.21 | |
| 272 | STERILE SUPPLIES | | | 046 | 6844.00 | |
| 301 | LAB/CHEMISTRY | | | 313 | 68234.00 | |
| 305 | LAB/HEMATOLOGY | | | 180 | 7494.00 | |
| 307 | LAB/UROLOGY | | | 001 | 43.00 | |
| 311 | CYTOLOGY | | | 005 | 2304.00 | |
| 324 | DIAGNOSTIC CHEST X-RAY | | | 106 | 30277.95 | |
| 360 | OR SERVICES | | | 002 | 23200.00 | |
| 391 | BLOOD/ADMINISTRATION | | | 186 | 40899.00 | |
| 410 | RESPIRATORY SERVICE | | | 154 | 105718.00 | |

PAYER: EDS
BLUE CROSS OF MASSACHUSE

TENDER CARE LB 8081150009

TREATMENT AUTHORIZATION CODES: N/A

221213

| PRIN. DIAG. CD. | | | | | | | | ADM. DIAG. CD. | E-CODE | |
|---|---|---|---|---|---|---|---|---|---|---|
| 7467 | 99859 | 42741 | 4275 | 7775 | 7793 | 4280 | 9971 | 99662 | 7467 | 105 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3965 | 090103 | 35 | 090103 | 39 | 090103 | MA52467 | MAYER, JOHN E MD |
| 39 | 090103 | 38 | 090103 | 39 | 090103 | | |

REMARKS: HYPOPLAS LEFT HEART SYND

OCR/ORIGINAL   790-0208