UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHILDREN'S HOSPITAL CORP., <br><br> Plaintiff, <br><br> vs. <br><br> KINDERCARE LEARNING CENTERS, INC., BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OF OREGON, <br><br> Defendants | Civ. A. No. 04-11676-PBS |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### INTRODUCTION

The plaintiff, Children's Hospital, provided treatment to a seriously ill newborn at a cost of more than $1 million. It provided the treatment in reliance on assurances by the defendants that the newborn's mother was insured under her employer's ERISA-regulated employee benefit plan. The defendants have refused to pay the Hospital anything for the treatment it provided despite their earlier assurances and promises.

The Hospital filed a complaint in Superior Court on straightforward common law theories of fraud, promissory estoppel, etc. The complaint also included a claim under G.L. c. 93A. The defendants, seeking to avoid all liability, removed the case to this Court on the grounds that the Hospital's claims are "completely preempted"[1] by ERISA. As demonstrated below, their contention is incorrect. The Hospital's claims are not "completely preempted," and for that reason this Court lacks subject matter jurisdiction. Accordingly, the Court must remand this case to the Superior Court.

---
[1] Complete preemption is defined, and distinguished from ordinary preemption, on pp. 3-4, infra.

FACTS

Baby Girl D.[2] was born with serious health problems at Hartford Hospital in Hartford, Connecticut on August 19, 2003. (Compl. ¶ 11). She was transferred and admitted to Children's Hospital ("the Hospital") on August 20. (Compl. ¶ 11). Her mother, Jane Doe, was an employee of Kindercare Learning Centers, Inc. ("Kindercare"). (Compl. ¶ 8). Kindercare sponsors the Kindercare Learning Centers, Inc. Employee Benefit Plan ("the Plan"), under which employee participants and their dependents are eligible for health benefits. (Compl. ¶ 5). Regence Blue Cross Blue Shield of Oregon ("BCOR") administers the Plan but is not the insurer; rather, Kindercare is a self-insurer. (Compl. ¶ 5).

Upon her daughter's admission, Mrs. Doe told the hospital that she was insured by BCOR. (Compl. ¶ 12). From August 25 on, agents or employees of BCOR repeatedly represented to the hospital that Mrs. Doe's policy was "active," that she was insured, and that the hospital would have "no problem" in securing reimbursement for services rendered. (Compl. ¶¶ 12, 13, 15-22).   In reliance on these representations, the Hospital treated Baby Girl D.  The total cost of the services the Hospital provided was $1,084,859.21. (Compl. ¶ 55).

In the end, Kindercare, BCOR, and Blue Cross Blue Shield of Massachusetts, Inc. ("BCMA") refused to pay for any of the services that the Hospital provided to Baby Girl D. in reliance on BCOR's repeated representations of coverage. (Compl. ¶ 35).[3] They took the position that Mrs. Doe had not timely paid her premiums and therefore was not entitled to benefits under the Plan. (Compl. ¶ 31). Kindercare took steps to ensure that Mrs. Doe would be unable to restore her eligibility for coverage in order to escape any liability to to Mrs. Doe under the terms

---

[2] Children's Hospital refers to the patient whose care is at issue in this case and to her mother by pseudonyms in order to preserve their privacy. Their identities are irrelevant to the instant motion.

[3] BCMA has a Hospital Services Agreement with Children's Hospital pursuant to which it promised to reimburse the Hospital for urgent medical care provided to out-of-state members of other Blue Cross licensees such as BCOR. (Compl. ¶ 7).

of the Plan or to the Hospital. For instance, Kindercare offered to allow Mrs. Doe to pay her overdue premiums by December 18, 2003. (Compl. ¶ 29). But when the Hospital attempted on December 18 to facilitate this payment by making a wire transfer, Kindercare then insisted on receiving a check in hand by the close of business that day—a physical impossibility, given that its offices were located in Oregon. (Compl. ¶ 31). Kindercare also refused to accept Mrs. Doe's offer to pay using a friend's credit card (with the friend's permission). (Compl. ¶ 32). To date, the Hospital has received no payments from any of the defendants.

### PRIOR PROCEEDINGS

The Hospital commenced this action in the Suffolk County Superior Court on July 6, 2004. The counts were for fraud, negligent misrepresentation, promissory estoppel, breach of contract, account annexed, and violations of G.L. c. 93A, § 2. In other words, the only claims arose under Massachusetts law.

The defendants removed the action to this Court on July 28. The sole basis for removal is their contention that the Hospital's claims are "completely preempted" by the Employee Retirement Income Security Act of 1974 ("ERISA").

### ARGUMENT

This is a classic misrepresentation of coverage case, <u>i.e.</u>, a case in which a health care provider alleges that a health insurer induced it to provided services to its insured by falsely representing that the insured was covered under its policy. The federal courts lack jurisdiction of such cases unless they are "completely preempted" by ERISA. It is abundantly clear that "complete preemption" does not exist here.

<u>Ordinary</u> ERISA preemption (as distinguished from complete preemption) occurs whenever the plaintiff's state law claim "relates to" an employee benefit plan, unless the claim

3

comes within a statutory exception to the preemption provisions of ERISA. See ERISA § 514(a), 29 U.S.C. § 1144(a) (2000).[4] Ordinary preemption is a mere defense to a state law claim. Like nearly every other defense of federal law, it does not create subject matter jurisdiction when the plaintiff's well-pleaded complaint states only claims arising under state law. See Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4-5 (1st Cir. 1999).

Complete preemption, on the other hand, occurs only when "a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep." Id. at 4. When a claim is completely preempted, "the cause is deemed federal no matter how pleaded." Id. Because a completely preempted claim is a federal claim regardless of the plaintiff's artful pleading, it is removable. See id.

Not all claims that are preempted by ERISA § 514(a) are completely preempted. Thus the district courts will lack jurisdiction of ordinary preempted claims unless there is another basis for federal jurisdiction, such as diversity of citizenship.

A claim is completely preempted when the defendant shows that "the state cause of action falls within the scope of ERISA § 502(a)," i.e., when "the state law [is] properly characterized as an alternative enforcement mechanism of ERISA § 502(a) or of the terms of an ERISA plan." Danca, 185 F.3d at 5 (citations and internal quotation marks omitted). Section 502(a) provides that "participants," "beneficiaries," and "fiduciaries" have standing to bring civil actions in various circumstances.[5]

Health care providers are not, absent special circumstances, participants, beneficiaries, or fiduciaries. See Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001). They are not participants because they are not

---

[4] The statutory exception is the "savings clause," § 514(b)(2)(A), which is not relevant here.
[5] The statute also permits the Secretary of Labor and the states to bring actions in certain cases not relevant here.

4

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

ERISA § 3(7), 29 U.S.C. § 1002(7) (2000). They are not beneficiaries because they are not

> a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

ERISA § 3(8), 29 U.S.C. § 1002(8) (2000). They are not fiduciaries because they do not exercise any discretionary authority with respect to the management or administration of a plan or its assets. See ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (2000).

Providers who sue as assignees of participants or beneficiaries would have standing under § 502(a), see City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 228 (1st Cir. 1998), but Children's Hospital has no such assignment and has not alleged an assignment from Jane Doe or Baby Girl D.

Plaintiffs (including health care providers) who are not participants, beneficiaries, or fiduciaries lack standing to bring a claim under § 502(a). See State Street Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 88 (1st Cir. 2001); Kwatcher v. Massachusetts Serv. Employees Pension Fund, 879 F.2d 957, 964-65 (1st Cir. 1989);[6] Eggert v. Merrimac Paper Co. Leveraged Employee Stock Ownership Plan & Trust, 311 F.Supp.2d 245, 251-52 (D. Mass. 2004); Nahigan v. Leonard, 233 F.Supp.2d 151, 165 (D. Mass. 2002). For this reason, their claims under state law cannot be completely preempted. It would be absurd to say, on the one hand, that a provider lacks standing to bring § 502(a) claims and, on the other hand, that his state law claims are preempted because they are alternative enforcement mechanisms for his § 502(a) claims. See Hobbs 276 F.3d at 1241-43; Ward v. Alternative Health Delivery Sys., Inc., 261 F.3d

---

[6] Kwatcher has been abrogated on other grounds, viz. its holding that the sole shareholder and president of a corporation could not qualify as a participant.

5

624, 627 (6th Cir. 2001); Memorial Hosp. for Cancer & Allied Diseases v. Empire Blue Cross & Blue Shield, 18 Employee Benefits Cas. (BNA) 1911 (S.D.N.Y. 1994). The absurdity is especially apparent here, because even if Baby Girl D. and Jane Doe had assigned their § 502 claims to the Hospital, those claims would lack merit. A § 502 claim seeks to recover benefits to which the participant or beneficiary is entitled under an employee benefit plan. But here, the precise basis of the Hospital's claim is that Jane Doe and her daughter were not entitled to recover benefits under the Plan. See Eugenia Hosp. v. Kim, 844 F.Supp. 1030, 1032 (E.D. Pa. 1994). In this case, the question whether Baby Girl D. was independently entitled to benefits is irrelevant. The Hospital is suing on the defendants' representations and promises, which induced the Hospital to provide care.

Eugenia Hospital is directly on point. There, Kim, an employee of WLR and a participant in its employee health plan, was admitted to the hospital. The hospital contacted the administrator of the health plan, which provided it with "pre-admission certification" and represented that Kim was entitled to coverage. The policy had a $10,000 limitation of coverage, of which the administrator did not inform the hospital. When the insurer refused to pay, the hospital sued under state law, and WLR removed on ERISA grounds. The court granted the hospital's motion to remand because the hospital lacked standing to assert a claim under § 502.[7] The court reached the same conclusion in Lifetime Med. Nursing Servs., Inc. v. New Eng. Health Care Employees Welfare Fund, 730 F.Supp. 1192 (D.R.I. 1990), a simple claim for payment for services rendered.

---

[7] Eugenia Hospital is on point for another reason as well. There, as here, the hospital's complaint included allegations of an agency relationship between the plan administrator and the employer based on principles of actual and apparent authority. See Eugenia Hosp., 844 F.Supp. at 1032. There, the employer argued that because the agreement between it and the administrator (called the "payor agreement") established a fiduciary relationship regulated by ERISA, the payor agreement was essentially a part of the plan, and thus the hospital's claim was preempted. The court rejected this argument out of hand, ruling that the payor agreement was distinct from the plan, and that the hospital's agency allegations could be litigated without reference to the plan itself. See id. at 1032-33.

6

It is worth noting that Aetna Health Inc. v. Davila, 124 S.Ct. 2488 (2004), the Supreme Court's recent "complete preemption" decision, referenced in the defendants' Notice of Removal, has no effect on the law applicable to the instant case. In Davila, the plaintiffs were participants and beneficiaries, see id. at 2493, and the case therefore has nothing to say about the standing of third-party health care providers under § 502 or the removability of their claims.

Cases such as Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991), and Charlton Mem. Hosp. v. Foxboro Co., 818 F.Supp. 456 (D. Mass. 1993) are also not on point, because in both the provider asserted claim as assignee of the participant or beneficiary in addition to asserting claims in its own right. See Cromwell, 944 F.2d at 1277; Charlton Mem. Hosp., 818 F.Supp. at 458.

In summary, the Hospital lacks standing to sue under § 502(a) because it is not a provider, a beneficiary, or a fiduciary. As a result, its state law claims cannot be understood as restatements of a § 502(a) claim, and they are therefore not completely preempted. In the absence of complete preemption, this Court lacks jurisdiction.

7

## CONCLUSION

For the foregoing reasons, the Court should remand this action to the Suffolk County Superior Court.

Respectfully submitted,

CHILDREN'S HOSPITAL CORP.

By its attorneys:

/s/ Theodore J. Folkman
John D. Hanify (BBO No. 219880)
Theodore J. Folkman (BBO No. 647642)
HANIFY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400

Dated: August 3, 2004
411325