UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*******************************************  *
CHILDREN'S HOSPITAL CORPORATION,              *
                                              *
              Plaintiff,                      *
                                              *
                                              *
v.                                            *
                                              *    Civil Action No. 04-11676-PBS
                                              *
KINDERCARE LEARNING CENTERS,                  *
INC., BLUE CROSS BLUE SHIELD OF               *
MASSACHUSETTS, INC., and REGENCE              *
BLUE CROSS BLUE SHIELD OF OREGON,             *
                                              *
              Defendants.                     *
*******************************************
```

DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff Children's Hospital Corporation ("Children's Hospital" or the "Hospital") seeks to remand this case, insisting that it lacks standing to pursue its claims under ERISA, and therefore federal jurisdiction is inappropriate. However, not only does Children's Hospital have derivative standing by virtue of an assignment of benefits, but the underlying facts of this case fall squarely within the civil enforcement provision of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), mandating complete preemption. Fundamentally, this is a claim for benefits under an ERISA plan, and the Hospital cannot escape this conclusion by artful pleading designed to circumvent federal jurisdiction.

**Background**

The present dispute concerns payment for medical services rendered by the Hospital to an infant child of an employee of KinderCare Learning Centers, Inc. ("KinderCare"). As

asserted in the Complaint (the allegations of which are assumed to be true for purposes of this motion only), KinderCare is a provider of early childhood education and care. (Complaint, ¶ 5). KinderCare sponsors an employee benefit plan (the KinderCare Learning Center, Inc. Employee Benefit Plan (the "Plan")), "which provides employee participants with health care benefits for themselves and their dependents." (Id.). Regence Blue Cross Blue Shield of Oregon, Inc. ("Blue Cross Oregon") administers the Plan. (Id.). Under a reciprocity agreement, Blue Cross Blue Shield of Massachusetts, Inc. ("Blue Cross Massachusetts") facilitates the provision of services to members of Blue Cross Oregon. (Id. ¶ 6). "Kindercare self-insures the cost of medical services under the auspices of the Blue Cross defendants." (Id. ¶ 5).

Kindercare employed an individual identified in the Complaint as Jane Doe. (See id. ¶ 8). Mrs. Doe was a participant in the Plan when she gave birth to a girl ("Baby Girl D") on August 19, 2003. (Id. ¶ 9). Baby Girl D was born with serious medical problems, and was admitted to Children's Hospital in Boston on August 20, 2003. (Id. ¶ 11). In December 2003, Mrs. Doe was informed by the Plan administrator that she needed to pay an overdue premium by December 18, 2003 in order to maintain medical coverage. (Id. ¶¶ 28-29). When Mrs. Doe did not make the required payment, the Plan administrator informed the Hospital that KinderCare had disenrolled Baby Girl D, retroactive to the beginning of her care, and that payment must be received immediately to ensure continued coverage. No such premium payment was made. (Id. ¶¶ 31-33).

With one exception, the Hospital has not been paid for its services by KinderCare, Blue Cross of Oregon, or Blue Cross Massachusetts. (Id. ¶ 35). The Hospital alleges that it is entitled to in excess of $586,816 for the services it provided to Baby Girl D from Blue

Cross Oregon and Blue Cross Massachusetts (together, the "Blue Cross Defendants"), and the full amount of the services from KinderCare. (Id. ¶¶ 3, 36, 37). In this regard, on or about July 6, 2004, the Hospital filed suit in Suffolk Superior Court. The Hospital's Complaint alleges six causes of action: Count I, Fraud (against KinderCare and Blue Cross Oregon); Count II, Negligent misrepresentation (against KinderCare and Blue Cross Oregon); Count III, Promissory estoppel (against all defendants); Count IV, Breach of contract (against the Blue Cross Defendants); Count V, Account annexed (against KinderCare); and Count VI, Violation of G.L. 93A, §§2 and 11 (against KinderCare and Blue Cross Oregon).

On July 28, 2004, defendants removed the action to this Court based on complete preemption under ERISA. On August 3, 2004, the Hospital filed its instant Motion to Remand and memorandum in support thereof (the "First Memorandum in Support"), arguing that its state law claims could not be completely preempted by ERISA because Children's Hospital lacks standing under ERISA Section 502(a) (29 U.S.C. § 1132(a)). In this regard, the Hospital acknowledged that healthcare providers may acquire standing under Section 502(a) by virtue of an assignment from a participant or beneficiary; however, Children's Hospital represented that it "has no such assignment and has not alleged an assignment from Jane Doe or Baby Girl D." (First Memorandum in Support, at 5).

Despite its representation (and the centrality of the assignment to the issue), on August 24, 2004, in response to an inquiry by the Blue Cross Defendants, Children's Hospital filed Plaintiff's Second Memorandum in Support of its Motion to Remand ("Second Memorandum in Support"), acknowledging that its earlier affirmation that "no such assignment exists" required "clarification." (Second Memorandum in Support, at 1).

3

Specifically, in the Second Memorandum in Support, Children's Hospital confirms that contrary to its prior denial, Jane Doe had indeed executed an assignment in which she explicitly stated, "I give [Children's Hospital] . . . the right to collect payments from insurers for medical care as appropriate."

## ARGUMENT

### THE HOSPITAL'S CLAIMS ARE COMPLETELY PREEMPTED BY ERISA'S CIVIL ENFORCEMENT PROVISION, MAKING REMOVAL TO THIS COURT APPROPRIATE

Children's Hospital argues that its claims are not completely preempted and, therefore, are not removable to this Court. In this regard, the Hospital's argument turns on its assertion that it lacks standing to bring a claim under ERISA's civil enforcement provisions, Section 502(a), 29 U.S.C. § 1132(a). For the reasons discussed herein, the Hospital's claims for payment for services rendered to Baby Girl D indeed fall within the scope of ERISA Section 502(a), are therefore subject to complete preemption, and were, thus, properly removed to this Court.[1]

### Causes Of Action Within The Scope Of ERISA § 502(a) Are Completely Preempted

Federal removal jurisdiction is normally ascertained by examining the face of the state court complaint. In re Pharmaceutical Indus. Avg. Wholesale Price Lit., 309 F. Supp. 2d 165, 170 (D. Mass. 2004). However, where a claim under state law implicates an area of federal law for which Congress intended "a particularly powerful preemptive sweep"

---

[1] The Hospital's Motion to Remand should be denied for the additional reason that the Hospital failed to comply with Rule 7.1 of the Local Rules of this Court. Specifically, Local Rule 7.1 mandates that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." The Hospital made no such certification, as it had no such conference. Because the Hospital failed to conduct the conference prior to filing its Motion, the parties had no opportunity to discuss in good faith the issue of the propriety of the removal – a failing that may have resulted in the filing of otherwise potentially avoidable motion papers.

courts must "look beyond the face of the complaint' to determine the real nature of the claim 'regardless of plaintiff's characterization." Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 51 (1st Cir. 2000) (internal citations omitted).  Thus, "[w]hen [a] federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law," and, therefore, removal based on 28 U.S.C. §1441(b) is appropriate.  Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003); see also, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Aetna Health Inc. v. Davilla, 124 S. Ct. 2488, 2495 (2004).

ERISA's civil enforcement provision, Section 502(a), is one area of federal law that triggers the complete preemption exception to the well-pleaded complaint rule.  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).  The congressional purpose behind the enactment of this provision was to provide "a uniform regulatory regime over employee benefit plans" and "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law."  Aetna, 124 S. Ct. at 2495; New York Conf. of Blue Cross Blue Shield Plans v. Travelers, 514 U.S. 645, 656 (1995).  In an effort to maintain this uniformity, courts have repeatedly held that state law claims are completely preempted, and properly removable to federal court, if they fall within the scope of Section 502(a).  See, e.g., Danca, 185 F.3d at 4; Aetna, 124 S. Ct. at 2495 (any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy" is deemed preempted).  "Preemption is implicated when the state law at issue has a 'real bearing on the intricate web of relationships among the principal players in the ERISA scenario (*e.g.*, the plan, the administrators, the fiduciaries, the beneficiaries, and the employer).'"  In re Pharmaceutical Indus., 309 F. Supp. 2d at 172, quoting Carpenters Local Union No. 26 v.

5

U.S. Fidelity & Guarantee Co., 215 F.3d 136, 141 (1st Cir. 2000). Thus, "what matters … is [whether] the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan."[2] Danca, 185 F.3d at 6. If so, any state-law-based attack on such conduct amounts to an "alternative enforcement mechanism," which is prohibited for its potential to destroy the uniformity intended by ERISA. See id.

In finding complete preemption, courts are guided by the existence of three factors: (1) the plaintiff must have standing under Section 502(a) to pursue its claim; (2) its claim must fall within the scope of an ERISA provision that it can enforce via Section 502(a); and (3) the claim must not be capable of a resolution without an interpretation of the contract governed by federal law, *i.e.*, an ERISA-governed employee benefit plan. In re Pharmaceutical Indus., 309 F. Supp. 2d at 172 (noting that this three-part test, adopted by the Fourth and Seventh circuits, provides a useful road map for evaluating complete preemption). All three requirements are met in this action.

I. **MRS. DOE'S ASSIGNMENT OF BENEFITS GIVES THE HOSPITAL DERIVATIVE STANDING UNDER SECTION 502(a)**

The Hospital bases its Motion to Remand solely on the standing requirement, contending that it lacks standing to bring an ERISA claim and therefore its state law claims cannot be completely preempted. Specifically, the Hospital maintains that "it would be absurd to say, on the one hand, that a provider lacks standing to bring § 502(a) claims and, on the other hand, that his state law claims are preempted because they are alternative enforcement mechanisms for his § 502(a) claims." (First Memorandum in Support at 5). Because the Hospital *has* standing under Section 502(a), this position is groundless.

---

[2] In this regard, in evaluating complete preemption, "[t]he fact that ERISA does not provide the remedy plaintiffs seek is not relevant; all that matters is that the claim be within the scope of §502(a)." In re Pharmaceutical Indus., 309 F. Supp. 2d at 172, quoting Danca, 185 F.3d at 5, n.4.

6

Specifically, under 29 U.S.C. §1132(a)(1)(B), "a civil action may be brought by a *participant or beneficiary* . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." (emphasis added). In this regard, courts have regularly "recognize[d] derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans to be brought by certain non-enumerated parties," *i.e.*, persons other than participants or beneficiaries. Tango Transport v. Healthcare Fin. Servs., LLC, 322 F.3d 888, 891 (5th Cir. 2003); see also Kennedy v. Conn. General Life Ins., 942 F.2d 698 (7th Cir. 1991).

Instructively, the First Circuit has explicitly held that healthcare providers may acquire derivative standing as assignees of rights from one who is expressly granted standing by ERISA.[3] City of Hope Nat'l Medical Ctr. v. Healthplus, Inc., 156 F.3d 223, 226-28 (1st Cir. 1998) (recognizing that "the assignability of welfare plan benefits may further the goal of ERISA to promote the interests of employees and their beneficiaries in employee benefit plans" (internal quotations omitted)); I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., 182 F.3d 51, 52, 53 (1st Cir. 1999).

Thus, in City of Hope National Medical Center v. Healthplus, Inc., the First Circuit considered a document whereby a patient assigned her rights under her spouse's health insurance policy to a health care provider. City of Hope, 156 F.3d at 224. The First Circuit held that the health care provider, as assignee of a beneficiary, "satisfies the standing requirement of Section

---

[3] Notably, while Congress prohibited the assignment or alienation of benefits under pension plans, 29 U.S.C. § 1056(d)(1), Congress did not include such a ban on the assignment of benefits under welfare plans. City of Hope, 156 F.3d at 225. Thus, "Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits acknowledged and accepted the practice, rather than prohibiting it." Id., citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 837-38 (1988).

1132," and "stand[s] in the shoes of his assignor." Id. at 227 (internal quotations omitted); see I.V. Servs. of Am., 182 F.3d 51, 52, 54 n.3 (1st Cir. 1999) (reasoning that the signing of a "Benefits Assignment Form," which authorized medical insurance benefits to be paid directly to medical provider, created "colorable claim" of assignment, easily clearing the "low hurdle" of derivative standing); see also Lutheran Gen. Hosp. v. Printing Indus. of Illinois/Indiana Employee Benefit Trust, 24 F. Supp. 2d 846, 849-850 (N.D. Ill. 1998) (the assignment to a hospital of the participant's right to benefits through a "consent and authorization" form that authorized the participant's insurance company to pay the hospital for all services rendered gave the hospital standing); Kennedy, 924 F.2d at 700 (noting that ERISA defines "beneficiary" as a "person designated by a participant . . . who is or may become entitled to a benefit," which definition implicitly includes assignee).

As now admitted in Plaintiff's Second Memorandum in Support, Mrs. Doe assigned the Hospital "the right to collect payments from insurers for medical care as appropriate." (Second Memorandum in Support, at 1). The assignment of benefits given by Mrs. Doe to Children's Hospital (the "Assignment") easily clears the "low hurdle" of establishing a "colorable claim" to benefits. See City of Hope, 156 F.3d at 228; I.V. Servs. of Am., 182 F.3d at 54 n.3. In turn, this colorable claim to benefits is sufficient to confer federal jurisdiction. Kennedy, 924 F.2d at 700 ("Subject-matter jurisdiction depends on an arguable claim, not on success"); Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790 (7th Cir. 1996) (noting that the standard for a colorable claim is lenient).

Indeed, courts have found far less explicit conduct to confer standing. In Kennedy v. Connecticut General Life Insurance, the Seventh Circuit reasoned that "*[t]he possibility of direct payment is enough to establish subject-matter jurisdiction.*" Kennedy, 924 F.2d at

701 (emphasis added).  There, an insurance policy that provided that "at the option of the Insurance Company and with the consent of the Policyholder, all or any part of the medical benefits may be paid directly to the person or institution on whose charge the claim is based" was found sufficient to establish subject matter jurisdiction.  Id.

Notably, in the present case, the Plan[4] provides:

> *Most hospitals will bill the claims administrator directly* for the entire cost of the hospital stay.  The claims administrator will pay the hospital and send you copies of their payment record.

Plan, at 121 (emphasis added).

The contract between Blue Cross Massachusetts and Children's Hospital (the "Hospital Services Agreement")[5] evidences the same understanding.  Specifically, as reflected in the Hospital Services Agreement, the Hospital agreed that "in no event . . . [would it] bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a Member." (Hospital Services Agreement, § 5.1).

In this instance, where Children's Hospital (a) had Mrs. Doe execute an assignment of benefits, (b) contracted with Blue Cross of Massachusetts never to seek remuneration directly from a member, and (c) admits to having contacted defendants on numerous occasions regarding Mrs. Doe's benefits under the Plan, it is self-evident that the Hospital presumed an entitlement to benefits under the Plan and acted in furtherance of such entitlement.  These facts are sufficient to establish that the Hospital has derivative standing under Section 502(a).  See, e.g., City of Hope, 156 F.3d at 226-28; I.V. Servs. of Am., 182

---

[4] Relevant excerpts of the Plan are attached as Exhibit B to the Affidavit of Terry Anderson.
[5] Relevant excerpts of the Hospital Services Agreement are attached as Exhibit A to the Affidavit of Terry Anderson.

9

F.3d at 52; Kennedy, 924 F.2d at 701.[6]

## II. THE HOSPITAL'S CLAIMS ARE WITHIN THE SCOPE OF § 502(a)

Once recognizing that the Hospital, as an assignee, is effectively standing in Mrs. Doe's shoes, the remaining elements of complete preemption fall easily into place (perhaps accounting for the Hospital's failure to raise any arguments related to these elements). In this regard, the Hospital's claims for monetary payment for services rendered to Baby Girl D fall directly within the scope of ERISA Section 502(a). See Danca, 185 F.3d at 6.

As noted above, in cases such as this, involving ERISA preemption, "[t]he artful pleading doctrine permits a district court to recharacterize a putative state-law claim as a federal claim when a review of the complaint, taken in context, reveals a colorable federal question within a field in which state law is completely preempted." BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding, 132 F.3d 824, 832 (1st Cir. 1997). Indeed, a plaintiff is not permitted to conceal the true nature of his claims to avoid jurisdiction. Fitzgerald v. Codex Corp., 882 F.2d 586, 588-89 (1st Cir. 1989); Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1290 (5th Cir. 1988).

In procedural circumstances very much like those of the present case, the Supreme Court in Aetna Health Inc. v. Davila, rejected efforts by plan members to avoid federal court jurisdiction by refusing to advance their Section 502(a) claims. 124 S. Ct. 2488, 2494 (2004). Specifically, the plaintiffs in that case brought state law causes of action sounding

---

[6] While various defenses may ultimately be asserted to the Hospital's claims under ERISA, such as an anti-assignment provision, such a provision could potentially serve only to defeat the Hospital's ERISA claims, and not to undermine the "colorable claim" of standing. City of Hope, 156 F.3d at 228 (internal quotations omitted) ("The standing inquiry does not focus on the merits of the dispute. It focuses only on whether the litigant is entitled to have the court decide the merits of the dispute."); see also I.V. Servs. of Am., 182 F.3d at 54, n.3. In any event, in this instance, the Plan in fact confirms that the insurer will generally pay the Hospital directly. Plan, at 121.

in tort, and allegedly sought not to recover benefits under a health plan, but rather "tort damages". Id.  The Court looked beyond the claims, and determined that the plaintiffs "complain only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." Id. at 2497.  Accordingly, the Court held that to "distinguish[] between pre-empted and non-preempted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortuous breach of contract." Id. at 2498.  Nevertheless, just as here, the plaintiffs "contend[ed] . . . that the complained-of actions violate legal duties that arise independently of ERISA or the terms of the employee benefit plans . . . ." Id. at 2497.  Rejecting that argument, the Court held that the "state causes of action fall 'within the scope of' ERISA § 502(a)(1)(B), and are therefore completely pre-empted . . . and removable to federal district court." Id. at 2498.  Noting that the plaintiffs had been given the opportunity to amend their complaints to bring expressly a claim under ERISA Section 502(a), but declined to do so, the Court refused to consider what compensation might have been available to the plaintiffs had they brought the ERISA claim. Id. at 2502.

Likewise, in Fitzgerald v. Codex Corp., the First Circuit considered a situation, like this case, in which a plaintiff "for the purpose of defeating federal question jurisdiction . . . stated repeatedly that he did not intend to state a claim under . . . ERISA." 822 F.3d at 588. The court recognized that the plaintiff could not conceal the true nature of his claims to avoid jurisdiction and that, in fact, the plaintiff's wrongful discharge action fell within the scope of Section 502(a) and was therefore removable to federal court. Id. at 588-89. Ultimately, the court held that although the state law claims were preempted, the facts

11

alleged were sufficient to state a claim under ERISA – despite the plaintiff's constant denial of any intent to bring such an action.  Id.; see also Lifetime Med. Nursing Servs., Inc. v. N.E. Health Care Employees Welfare Fund, 730 F. Supp. 1192, 1194 (D.R.I. 1990). ("Although plaintiffs, by way of the complaint, generally control which forum will oversee litigation, they may not defeat defendants' power to remove a case by artfully omitting any mention of federal law from the complaint.").

Similarly, this Court, in Danca, concluded that artful pleading could not be used to avoid federal jurisdiction.  There, reviewing state law claims based on negligent decision-making, the First Circuit reasoned, "[w]hat matters, in our view, is that *the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan*."  185 F.3d at 6 and n.6 (emphasis added) (concluding that although ERISA does not define the term "benefits"; in the ERISA context, "benefits" refers to the "*monetary payments for medical services*, not the services themselves.").

Here, just as in Danca, it is undeniable that the Hospital attacks the conduct "of the defendants in the course of processing a claim for benefits."  See id.  Indeed, the damages sought by the Hospital are specifically those amounts to which Children's Hospital would arguably be entitled to if Mrs. Doe were covered by the Plan.  In this regard, the Defendants' alleged misrepresentations have focused on the Plan and the intricacies of coverage determinations thereunder.[7]  Moreover, under any view of the facts, the

---

[7]     Such claims fit comfortably within the scope of ERISA.  See, e.g., Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790 (1st Cir. 1995) (finding plaintiff's misrepresentation claims preempted because court's inquiry would necessarily be directed to the Plan); Utility Workers, Local 369 v. NSTAR Electric and Gas Corp., 317 F. Supp. 2d 69, 72-73 (D. Mass. 2004) (same).  Indeed, while not always successful, claims of promissory estoppel are regularly asserted under ERISA.  See, e.g., Utility Workers, Local 369, 317 F. Supp. 2d at 72-73; Center v. First Int'l Life Ins. Co., No. 94-11596-PBS, 1997 WL 136473 (D. Mass. March 13, 1997).

representations allegedly made by the Defendants were derived directly from their interpretation of the Plan document.

Accordingly, looking beyond the Hospital's characterizations of its claims, it becomes readily apparent that the fundamental nature of the Hospital's claims are in reality claims under section 502(a), and represent nothing more than an alternative enforcement mechanism. Indeed, such a review demonstrates that the Hospital has studiously attempted to disguise the true nature of its claims in an effort to circumvent federal jurisdiction. As a result, permitting these state law claims to proceed would undermine the congressional intent of providing a uniform regulatory regime over employee benefit plans. See Aetna, 124 S. Ct. at 2495.

Simply put, the Hospital's assertion that it brings these claims in its own right and "is not suing on the basis of any . . . assignment" (Second Memorandum in Support, at 2) is irrelevant to the Section 502(a) analysis. The dispositive factor is that the allegations reveal a colorable federal question within a field in which state law is completely preempted. BIW Deceived, 132 F.3d at 832. Any other result "would allow parties that lacked standing to sue under ERISA to circumvent its enforcement provisions by filing suit in state courts under state law. Arguably, they could thus obtain advantages denied to parties plaintiff enumerated under § 1132(a). This is an untenable result." Hermann Hospital, 845 F.2d at 1290.

### III. THE HOSPITAL'S CLAIMS CANNOT BE RESOLVED WITHOUT REFERENCE TO THE PLAN

The final element of the complete preemption test, *i.e.*, that the claim must not be capable of resolution without an interpretation of the contract governed by federal law, In re Pharmaceutical Indus., 309 F. Supp. 2d at 172, is likewise satisfied. Specifically,

underlying each of the purported state law claims is the Hospital's assertion of Mrs. Doe's entitlement (vel non) to benefits. (See Complaint, ¶ 8 ("Mrs. Doe was a participant in the Plan and was enrolled to receive for herself and her dependents health care benefits under the Plan."); Complaint, ¶ 9 ("Kindercare employees and dependents, specifically Mrs. Doe and her daughter, Baby Girl D., were entitled to receive coverage for hospital medical services at Children's Hospital."); Complaint ¶ 50 ("Blue Cross Massachusetts breached [its agreement] by refusing to pay children's Hospital for services rendered to Baby Girl D. before her enrollment terminated, i.e., before December 18, 2003" )). Accordingly, in order to assess the existence and impact of misrepresentations made in the course of the Plan's administration, reference to the Plan itself is unavoidable. Indeed, in order to determine whether particular statements were, as alleged, misrepresentations or were, instead, accurate reflections of the Plan terms, this Court must review and rely on the Plan itself.[8] The Hospital's contrived attempts to isolate these claims from the Plan is thus unavailing.[9]

---

[8]     The health insurance plan at the center of this controversy is plainly an "employee welfare benefit plan" under ERISA. 29 U.S.C. §1002(1) provides that such a plan includes "any plan, fund or program which was…established or maintained by an employer…for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) *medical, surgical, or hospital care or benefits...*" (emphasis added). That the Plan was established by Kindercare for this purpose – to "provide[ ] employee participants with health care benefits for themselves and their dependents" – is explicitly acknowledged by the Hospital. (Complaint, ¶ 5).

[9]     Indeed, with respect to the contract claim, because payment under the Contract turns on whether the patient is entitled to coverage under the Plan ("We agree to make payment to your hospital … for Covered Services"), this claim plainly cannot be resolved without reference to the Plan. (Contract, §4.1 at 15).

**CONCLUSION**

For all the above reasons, the Motion to Remand should be denied.

        Respectfully submitted,

        KINDERCARE LEARNING
        CENTERS, INC.,

        By its attorneys,


        /s/ Robert P. Morris
        Robert P. Joy (BBO #254820)
        Robert P. Morris (BBO #546052)
        MORGAN, BROWN & JOY, LLP
        One Boston Place
        Boston, MA  02108
        617-523-6666 (tel)
        617-367-3125 (fax)

        BLUE CROSS BLUE SHIELD OF
        MASSACHUSETTS, INC., and
        REGENCE BLUE CROSS BLUE
        SHIELD OF OREGON

        By their attorneys,


        /s/ Russell Beck
        Russell Beck (BBO No. 561031)
        Erica Templeton Spencer (BBO No. 651967)
        EPSTEIN BECKER & GREEN, P.C.
        111 Huntington Avenue
        Boston, MA  02199
        617-342-4000 (tel)
        617-342-4001 (fax)

Dated:  September 3, 2004