UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

******************************************  *
CHILDREN'S HOSPITAL CORPORATION, *
                                          *
        Plaintiff,                        *
                                          *
v.                                        *
                                          *   Civil Action No. 04-11676-PBS
                                          *
KINDERCARE LEARNING CENTERS,              *
INC., BLUE CROSS BLUE SHIELD OF           *
MASSACHUSETTS, INC., and REGENCE          *
BLUE CROSS BLUE SHIELD OF OREGON,         *
                                          *
        Defendants.                       *
******************************************

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' JOINT MOTION TO DISMISS**

**INTRODUCTION**

The plaintiff, Children's Hospital Corporation ("Children's Hospital" or the "Hospital"), asserts six state law causes of action, all arising from services that the Hospital provided to a putative member of a group health insurance plan (the "Plan") sponsored by Kindercare Learning Centers, Inc. ("Kindercare") and administered by Regence Blue Cross Blue Shield of Oregon ("Blue Cross Oregon"). All of the Hospital's claims relate to the Plan, which the Hospital alleges that it understood would provide coverage. Accordingly, under well-established standards, all of the Hospital's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. and should be dismissed, as against all of the defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As a separate and independent matter, Blue Cross Oregon moves to dismiss all of the Hospital's claims against it on the basis of lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND

The present dispute concerns payment for medical services rendered by the Hospital to an infant child of an employee of KinderCare. As asserted in the Complaint (the allegations of which are assumed to be true for purposes of this motion only), KinderCare is a provider of early childhood education and care. (Complaint, ¶ 5). KinderCare sponsors an employee benefit plan (the KinderCare Learning Center, Inc. Employee Benefit Plan (the "Plan")), "which provides employee participants with health care benefits for themselves and their dependents." (Id.). Regence Blue Cross Blue Shield of Oregon, Inc. ("Blue Cross Oregon") administers the Plan. (Id.). Under a reciprocity agreement, Blue Cross Blue Shield of Massachusetts, Inc. ("Blue Cross Massachusetts") facilitates the provision of services to members of Blue Cross Oregon. (Id. ¶ 6).

Kindercare employed an individual identified in the Complaint as Jane Doe. (See id. ¶ 8). Mrs. Doe was a participant in the Plan when she gave birth to a girl ("Baby Girl D") on August 19, 2003. (Id. ¶¶ 8-9). Baby Girl D was born with serious medical problems and was admitted to Children's Hospital in Boston on August 20, 2003. (Id. ¶ 11). In December 2003, Mrs. Doe was informed by the Plan administrator that she needed to pay overdue premiums in order to maintain medical coverage. (Id. ¶¶ 28-29). When Mrs. Doe did not make the required payment, the Plan administrator informed the Hospital that KinderCare had disenrolled Baby Girl D, retroactive to the beginning of her care, and that payment must

be received immediately to ensure continued coverage. No such premium payment was made. (Id. ¶¶ 31-33).

At several times during the course of the Hospital's treatment of Baby Girl D, the Hospital communicated with, *inter alia*, Blue Cross Oregon regarding Baby Girl D's treatment and entitlement to benefits. (Id., passim). Blue Cross Oregon has no other contacts with Massachusetts. (See Affidavit of Bart McMullan, Jr. ("McMullan Aff."), ¶¶ 2-6, which has been filed contemporaneously herewith.)

Based on facts asserted in the Complaint, the Hospital alleges that Mrs. Doe was entitled to healthcare coverage, and that the Hospital is therefore entitled to reimbursement for "services rendered to Baby Girl D before her enrollment was terminated, *i.e.*, before December 18, 2003." (Id. ¶ 50). On this basis, the Hospital claims that it is entitled to over $586,816 for the services it provided to Baby Girl D from Blue Cross Oregon and Blue Cross Massachusetts (together, the "Blue Cross Defendants"), and the full amount of its charges for the services (over $1,000,000) from KinderCare. (See id. at ¶¶ 3, 36, 37). In this regard, on or about July 6, 2004, the Hospital filed suit in Suffolk Superior Court. The Hospital's Complaint alleges six causes of action: Count I, fraud (against KinderCare and Blue Cross Oregon); Count II, negligent misrepresentation (against KinderCare and Blue Cross Oregon); Count III, promissory estoppel (against all defendants); Count IV, Breach of contract (against the Blue Cross Defendants); Count V, account annexed (against KinderCare); and Count VI, violation of G.L. 93A, §§ 2 and 11 (against KinderCare and Blue Cross Oregon).

On July 28, 2004, Defendants removed the action to this Court based on complete preemption under ERISA. On August 3, 2004, the Hospital filed a Motion to Remand.

Defendants today concurrently file this Motion to Dismiss as well as an Opposition to the Hospital's Motion to Remand.

## ARGUMENT

**I.  ALL COUNTS IN THE HOSPITAL'S COMPLAINT "RELATE TO" THE PLAN AND ARE THEREFORE PREEMPTED BY ERISA.**

The gravamen of the Hospital's Complaint is that defendants failed to provide coverage for medical services that the Hospital rendered to Baby Girl D. (Complaint, passim.). The Hospital claims that the failure to pay for such services violates state law; however, it is well-settled that ERISA preempts state law claims that "relate to" employee benefit plans. Accepting the Hospital's allegations as true for purposes of this motion, all of the Hospital's claims relate to the Plan and, consequently, are preempted and must be dismissed.

**A.  The Complaint Establishes The Existence Of An ERISA Plan.**

It appears undisputed, and indeed is beyond dispute, that the health insurance plan at the center of this controversy is an "employee welfare benefit plan" under ERISA. Specifically, 29 U.S.C. §1002(1) provides that such a plan includes "any plan, fund or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) *medical, surgical, or hospital care or benefits* . . . ." (emphasis added). As the Hospital has explicitly acknowledged, the Plan was established by Kindercare for this very purpose. (Complaint, ¶ 5 ("[T]he Plan . . . provides employee participants with health care benefits for themselves and their dependents.")).

**B.  ERISA Preempts All State Laws That Relate To Any Employee Benefit Plan, Including The State Laws Relied Upon By The Hospital.**

ERISA was enacted in 1974 to comprehensively and exclusively regulate employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987); 29 U.S.C. § 1002(1)

4

(1988). Thus, Congress provided that ERISA "[s]hall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described in section 1003(a) of this title . . . ." 29 U.S.C. § 1144(a) (1988) (emphasis added).

As the Supreme Court has explained, ERISA expressly preempts state law in a "deliberately expansive" fashion. Pilot Life Ins. Co., 481 U.S. at 45-46 (noting that the "preemption clause is conspicuous for its breadth"). Accordingly, the term "relates to" (and thus the preemptive reach of ERISA) is broadly construed to apply even if the state law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements. Hampers v. W.R. Grace & Co., 202 F.3d 44, 49 (1st Cir. 2000) (citations omitted); accord, Hotz v. Blue Cross and Blue Shield of Massachusetts, Inc., 292 F.3d 57, 60 (1st Cir. 2002). Thus, the Supreme Court has held that "a law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).

This broad preemption language reflects an understanding that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Pilot Life Ins., 481 U.S. at 54; N.Y. Conf. of Blue Cross Blue Shield Plans v. Travelers, 514 U.S., 654, 656 (1995), citing 120 Cong. Rec. 29197 (1974) (emphasizing that the congressional purpose of exclusive regulation was to ensure uniformity and, in doing so, to minimize the administrative and financial burdens on participating plans by alleviating the need to comply with potentially conflicting state laws).

5

In general, courts use two approaches to determine whether certain claims "relate to" an ERISA plan, thereby mandating preemption. In evaluating state law claims, courts either review the underlying action *in its entirety* to determine whether the action is, at its core, an action for the recovery of benefits or, in the alternative, review the individual causes of action to determine whether each claim requires reference to an ERISA plan. Compare Mayeaux v. Louisiana Health Servs. and Indemnity Co. (d/b/a Blue Cross & Blue Shield), 376 F.3d 420, 432 (5th Cir. 2004) with Carlo v. Reed Rolled Die Co., 49 F. 3d 790, 793 (1st Cir. 1995). The Hospital's claims are preempted under either approach.

### 1. In totality, the Hospital's Claims are Claims for the Recovery of Benefits.

The First Circuit has held that a claim under state law "relates to" a regulated plan if the claim, in essence, is a *claim for benefits* under ERISA. Best v. AGFA Compugraphic, C.A. No. 91-13406-Z, 1992 WL 390713, *2 (D. Mass. 1992), citing Nash v. Trustees of Boston University, 946 F.2d 960, 964, n.8 (1st Cir. 1991) (emphasis added) ("Generally speaking, federal substantive law and not state law governs a *claim for benefits* under ERISA"). In this regard, it is not the label placed on a state law claim that determines whether it is preempted, but whether such a claim is implicitly a claim for the recovery of an ERISA plan benefit. See, e.g., Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir. 1985).

Accordingly, creative pleading cannot avoid the application of ERISA. See, e.g., Pilot Life, 481 U.S. at 54; Herman Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286 (5th Cir. 1988); Aetna Health, Inc. v. Davila, 124 S. Ct. 2488, 2495 (2004). Instructive in this regard is Mayeaux v. Louisiana Health Services and Indemnity Company (d/b/a Blue Cross & Blue Shield), in which the Fifth Circuit dismissed a physician's state law tort claims for negligence, unfair trade practices, defamation and intentional interference with

6

contracts on the basis that all such claims were "indisputably preempted by ordinary conflict preemption under § 514 of ERISA." 376 F.3d at 432. The Fifth Circuit agreed with the trial court that that the physician's claims "relate to an ERISA plan because they challenge [Blue Cross Blue Shield's] handling, review, and disposition of a request for coverage." Id. at 433. It reasoned that if "a medical practitioner could collaterally challenge a plan's decision not to provide benefits, he would directly affect and jeopardize the relationship between the plan and its beneficiary, two traditional ERISA entities." Id. Notably, the court explained that even "though these claims are labeled by Plaintiffs as state law, the claims arose from the manner in which [Blue Cross Blue Shield] determined not to cover [the treatments provided by the doctor] under the . . . Plan."[1] Id.

The Hospital's claims, though couched in the language of state law causes of action, are likewise "claims for benefits," because "the claims arose from the manner in which [the defendants] determined not to cover [the treatments provided] under the . . . Plan." See id. Although the Hospital, in an obvious effort to avoid the impact of ERISA, has been careful to scrupulously avoid stating as much, this action is self-evidently a collateral challenge to the Plan's decision not to provide benefits. See id. Indeed, even a cursory review of the Hospital's putative state law claims reveals numerous allegations that Mrs. Doe was

---

[1] Numerous decisions confirm this understanding. See also Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991) (preempting hospital's claims for promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith on the ground that they sought *recovery of benefits* from a health plan for medical services rendered which claims "are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan"); Pilot Life, 481 U.S. at 54 (finding ERISA preempted state law claims for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement arising from improper processing of a claim for benefits under an employee benefit plan); Herman Hospital, 845 F.2d at 1290 (preempting hospital's state law claims for equitable estoppel, negligence, breach of contract, fraud, and breach of fiduciary duty because such claims were, in essence, claims for benefits); Aetna v. Davila, 124 S. Ct. at 2495 (finding individual's state law suit complaining of denial of coverage for medical care preempted).

7

entitled to benefits under the Plan. (See, e.g., Complaint, ¶ 8 ("Mrs. Doe was a participant in the Plan and was enrolled to receive for herself and her dependents health care benefits under the Plan."); Complaint, ¶ 9 ("Kindercare employees and dependents, specifically Mrs. Doe and her daughter, Baby Girl D., were entitled to receive coverage for hospital medical services at Children's Hospital."); Complaint, ¶ 50 ("Blue Cross Massachusetts breached [its agreement] by refusing to pay children's Hospital for services rendered to Baby Girl D. before her enrollment terminated, i.e., before December 18, 2003")). Simply put, all of the Hospital's efforts to date, and all of its communications with the defendants, were for the specific purpose of recovering benefits for services rendered to Baby Girl D, and such claims are at "the very heart of issues within the scope of ERISA's exclusive regulation." See Cromwell, 944 F.2d at 1276.

The Hospital is not saved from the impact of ERISA by virtue of the fact that the defendants have denied Mrs. Doe's coverage. Notably, in the majority of cases where courts find that the plaintiff is seeking the recovery of benefits, the defendants have denied the plaintiff's entitlement to such benefits – indeed, this is typically what gives rise to the action in the first place. See, e.g., Mayeaux, 376 F.3d at 432-33; Cromwell, 944 F.2d at 1276. Accordingly, the Hospital's suggestion that defendants' denial of coverage brings this action outside the scope of ERISA is plainly unavailing.

Indeed, this Court confirmed this conclusion in Charlton Memorial Hospital v. Foxboro Co., the only decision in this District to consider to what extent ERISA preempts state law claims brought by medical providers for payments due. In Charlton Memorial, a hospital brought suit against an insurer and an employer, alleging failure to pay for in-patient hospital services. 818 F.Supp. 456 (D. Mass. 1993). The plaintiff's allegations in Charlton Memorial were virtually identical to those pleaded by Children's Hospital in this

8

action. See id. Specifically, Charlton Memorial alleged that it had received confirmation from an insurer (Travelers) that a patient admitted to the hospital was entitled to benefits, and the hospital had provided medical services to the patient in alleged reliance on such assurances. Id. at 458. Considering the hospital's G.L. c. 93A claim, which ultimately arose from the insurer's denial of coverage, this Court reasoned that the claim was:

> closely relate[d] to the plan itself inasmuch *as the alleged misrepresentation involves an alleged nonpayment of medical services rendered in accordance with the plan*. Such a claim relates directly to the administration of the plan and [the insurer's] alleged promise to pay benefits thereunder.

Id. at 461. The court noted that preemption is clearly called for when a participant seeks to collect medical benefits, and, therefore, "in light of the character of the misrepresentations at issue," "the fact that [the hospital] brings this action as a third party health care provider [does not] alter this court's view." Id. The Hospital's claims here are plainly no different and, thus, are likewise preempted.

### 2.    **The Individual Claims all Relate to the Plan.**

The First Circuit has "consistently held that a cause of action 'relates to' an ERISA plan when a court must *evaluate or interpret the terms of the ERISA-regulated plan to determine liability* under the state law cause of action." Hampers v. W.R. Grace & Co., 202 F.3d at 52 (emphasis added). On this basis, claims for misrepresentation are often preempted, given the inescapable need to refer to an ERISA-regulated plan. See, e.g., Carlo v. Reed Rolled Die Co., 49 F. 3d 790, 793 (1st Cir. 1995); Vartanian v. Monsanto Co., 14 F.3d 697, 699-700 (1st Cir. 1994); Best v. AGFA Compugraphic, WL 390713 at *2, citing, Nash v. Trustees of Boston Univ. (1st Cir. Dec. 9, 1992).

In this regard, the majority of the Hospital's claims are based on allegations that defendants either negligently or intentionally misrepresented Mrs. Doe's enrollment status

9

and her entitlement to coverage under the Plan.[2]  As such, any evaluation of these claims invariably requires interpretation of the underlying Plan provisions concerning when and on what basis Mrs. Doe was eligible for coverage.  Indeed, it is simply impossible to determine the defendants' culpability without consulting the Plan, given that the Plan's provisions govern the coverage determination.  For instance, liability for certain representations may well turn on what Mrs. Doe had to do in order to comply with the Plan and maintain her coverage.

The First Circuit's decision in Carlo v. Reed Rolled Die Co., 49 F. 3d 790, 793 (1st Cir. 1995), illustrates this point.  See 49 F. 3d at 793.  There, the court considered whether a plaintiff's claim for misrepresentation of benefits was preempted by ERISA Section 514.  Id.  As in the instant matter, the plaintiff in Carlo explicitly disavowed a claim for coverage under the health plan.  Id.  Despite recognizing cogent arguments against preemption in that context, the First Circuit concluded that the congressional intent of maintaining *exclusive* regulation over all matters related to ERISA plans must prevail.  Id.  In particular, the court noted that were the plaintiff to succeed on the merits, the plaintiff's damages would consist of the benefits allegedly promised to him, and to calculate such damages would require reference to the plan.  Id.

So too here.  Calculation of damages in the instant matter would inevitably require reference to the Plan.  If successful, the most that the Hospital could be entitled to under any of the theories presented is the benefit of its bargain – specifically, what it would have received had the Plan covered the services as was allegedly represented.  See also Vartanian v. Monsanto Co., 14 F.3d at 699-700 ("state law common law misrepresentation

---

[2]  Count I (fraud), Count II (negligent misrepresentation), Count III (promissory estoppel) and Count VI (violation of G.L.c.93A) are all based on the same underlying allegations that Defendants inaccurately conveyed coverage information to the Hospital.

10

claim preempted by ERISA" because it was "inseparably connected" to existence of ERISA plan); Local 369 Utility Workers v. NSTAR Elec. and Gas Corp., 317 F. Supp. 2d 69, 72 (D. Mass. 2004) (preempting state law claims by local union and retired utility workers for breach of contract and misrepresentation where claims related to corporation's alleged representation that workers' benefit plans, including health insurance for retirees, would not change and necessarily had connection with or reference to benefit plan itself); AGFA Compugraphics, 1992 WL at *2 (preempting plaintiff's claim that defendant misrepresented scope of her benefits). Since the determination of liability under the Hospital's misrepresentation claims will inevitably require reference to the Plan, such claims are necessarily preempted by ERISA.

The only remaining state law claim – the Hospital's breach of contract claim against Blue Cross Massachusetts – undeniably relates to the Plan as well. As alleged, Blue Cross Massachusetts and Children's Hospital are parties to an agreement (the "Hospital Services Agreement")[3] through which Blue Cross Massachusetts "agree[d] to make payment to [the] [H]ospital . . . for Covered Services . . . that are provided to Members." (Hospital Services Agreement, § 4.1). The terms "Members" and "Covered Services" both necessitate reference to the Plan and, in order to determine whether the Hospital is entitled to the payment it seeks under the Hospital Services Agreement, this Court must turn to the Plan to determine what if any coverage is appropriate. (See id., §§ 1.15, 2.1).

Similarly, the Hospital's allegation that Blue Cross Massachusetts "failed to use its best efforts to limit all account retroactive Member disenrollment" (Complaint, ¶ 51), requires reference to the Plan to determine whether "a Member has been disenrolled from a

---

[3] Relevant portions of the Hospital Services Agreement are attached to the Affidavit of Terry Anderson ("Anderson Aff.") filed herewith.

Product or plan retroactively." (Hospital Services Agreement, § 5.2). In this sense, disenrollment is not merely a status decided by the administrator's whim, but rather an entitlement of the subscriber if the subscriber *meets the terms and conditions of the Plan for enrollment*. Direct reference to the Plan – and therefore preemption – is unavoidable.

**II.    ALL COUNTS AGAINST BLUE CROSS OREGON SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

Although as established above, the Hospital's state law claims are preempted by ERISA, even if the claims had been actionable, this case would still need to be dismissed against Blue Cross Oregon pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, given that this Court lacks personal jurisdiction over Blue Cross Oregon. In this regard, it bears noting that (1) Children's Hospital retains the ultimate burden of demonstrating the existence of personal jurisdiction, and (2) this Court is not required to "credit conclusory allegations or draw farfetched inferences." Massachusetts Sch. of Law at Andover, Inc. v. American Bar Assoc., 142 F.3d 26, 34 (1st Cir. 1998), citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). As detailed below, the Hospital has alleged only random sporadic contacts, and therefore has not and cannot carry its burden of establishing that this Court has either specific or general jurisdiction over Blue Cross Oregon.

**A.    There Is No Basis for Asserting General Jurisdiction Over Blue Cross Oregon.**

General jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in *continuous and systematic activity*, unrelated to the suit, in the forum state." Massachusetts Sch. of Law, 142 F.3d at 34 (internal quotations omitted; emphasis added). The Hospital does not, and indeed cannot, allege that Blue Cross Oregon has engaged in such continuous

12

and systematic contact with Massachusetts.  See id.  Specifically, Blue Cross Oregon is a corporation domiciled in the State of Oregon and has a principal place of business in Portland, Oregon.  (McMullan Aff. ¶ 2).  Blue Cross Oregon does not have any offices or other places of business in Massachusetts, nor does it own any property in Massachusetts.  (Id., ¶ 3).  Blue Cross Oregon does not have a bank account, a telephone listing, or a mailing address in Massachusetts.  (Id., ¶ 4).  Blue Cross Oregon does not employ any individuals in the Commonwealth of Massachusetts.  (Id., ¶ 5).

The sole contacts alleged to have occurred between Blue Cross Oregon and the Commonwealth of Massachusetts are a handful of communications between Blue Cross Oregon and Children's Hospital.  (Complaint, passim).  These sparse contacts cannot possibly be characterized as "continuous and systematic, and, therefore, to the extent that jurisdiction exists, it can only be founded on specific jurisdiction.  See Massachusetts Sch. of Law, 142 F. 3d at 34; United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001), quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (where defendant's contacts with the forum "do not exist in sufficient abundance," the court need not inquire further as to whether there is general jurisdiction).

   **B.** **There Is No Basis For Asserting Specific Jurisdiction Over Blue Cross Oregon, And Doing So Would Violate Constitutional Due Process.**

Where jurisdiction is premised on specific jurisdiction, the Massachusetts long-arm statute is necessarily relevant; however, because the long-arm statute allows "jurisdiction over the person *to the limits allowed by the Constitution of the United States*" the inquiry may ultimately be consolidated into the single consideration of whether the constitutional requirements of due process are satisfied.  "Automatic" Sprinkler Corp. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972) (emphasis added); see Massachusetts Sch. of Law, 142

F.3d at 35 ("We need not pause to consider the particulars of the Massachusetts long-arm statute" because plaintiffs ultimately must establish that "the exercise of jurisdiction pursuant to the statute comports with the strictures of the Constitution.").

With regard to specific jurisdiction, the First Circuit has characterized compliance with the Constitution as implicating "three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." <u>Massachusetts Sch. of Law</u>, 142 F.3d at 35, <u>citing</u> <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F. 3d 138, 144 (1st Cir. 1995). Thus, in order for this Court to exercise specific personal jurisdiction over Blue Cross Oregon, the Hospital must establish that (1) its claims directly arise out of, or relate to, Blue Cross Oregon's Massachusetts activities, *i.e.*, "relatedness"; (2) Blue Cross Oregon's contacts with Massachusetts represent a purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of its laws and making Blue Cross Oregon's involuntary presence before this state's courts foreseeable; and (3) the exercise of jurisdiction is, in light of the "gestalt" factors, reasonable. <u>United Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1089 (1st Cir. 1992). All three prongs of this test must be satisfied in order to confer specific personal jurisdiction. <u>See</u> <u>Swiss Am. Bank, Ltd.</u>, 274 F.3d at 626.

Here, what is most apparent from the facts alleged by the Hospital is that Blue Cross Oregon has not purposefully availed itself of the privilege of conducting business in Massachusetts. Blue Cross Oregon has never reached into Massachusetts to do business of any sort. (McMullan Aff., ¶¶ 2-5). The only contacts alleged by the Hospital are certain communications between Hospital representatives and agents for Blue Cross Oregon. (Complaint, passim). Indeed, as alleged, the handful of communications by Blue Cross Oregon directed to this forum were merely in response to inquiries initiated by Children's

Hospital. (Id.). However, "[t]he function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's '*random, isolated, or fortuitous*' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (emphasis added), quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); see also Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) (foreign defendant's contacts with forum must be deliberate, not merely fortuitous).

In this instance, Children's Hospital has not alleged any facts that demonstrate that Blue Cross Oregon had anything more than "random, isolated" contacts that, through the fortuitous happenstance of Ms. Doe happening to receive treatment at the Hospital, were with Massachusetts. See Sawtelle, 70 F.3d at 1391. For this reason, it would not have been reasonable or foreseeable for Blue Cross Oregon to anticipate being hailed into Massachusetts to defend on this basis.

Moreover, the essence of the Hospital's claims is that the Massachusetts *effects* of Blue Cross Oregon's out-of-state activities constitute minimum contacts sufficient to confer jurisdiction. Specifically, the Hospital's Complaint alleges that Blue Cross Oregon's negligence (and/or intentional misconduct) in administering the Plan and determining Mrs. Doe's enrollment status – conduct that clearly took place in Oregon – impacted Children's Hospital in Massachusetts. (See Complaint, passim). In considering similar circumstances, however, the First Circuit has repeatedly found that the in-state effects of defendants' extra-forum activity fail to sustain a Massachusetts action. See, e.g., Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7 (1st Cir. 1986); Sawtelle v. Farrell, 70 F.3d 1381 (1st Cir. 1995) (holding that New Hampshire effects of non-forum

15

negligence were insufficient to support personal jurisdiction because the communications to the forum were ancillary to allegedly negligent non-forum activities).

To the extent that the Hospital contends that jurisdiction is based on the alleged existence of tortious acts within the Commonwealth, the Hospital has not met its burden of establishing jurisdiction on this basis either.  Specifically, accepting all of the Hospital's factual allegations as true, the most that can be said is that certain communications took place between Blue Cross Oregon and the Hospital.  (See Complaint, passim).  In contrast, the Hospital's repeated conclusion that Blue Cross Oregon knew or should have known the falsity of its representations regarding coverage is merely conclusory and should be disregarded as part of the jurisdictional inquiry.  See Massachusetts Sch. of Law, 142 F.3d at 34.  Indeed, were this not so, any would-be plaintiff would need only to initiate communications with an out-of-state defendant and allege misrepresentation to secure personal jurisdiction.  See id.

Because Children's Hospital must satisfy all prongs of the three-part constitutional inquiry, its failure to allege facts sufficient to demonstrate purposeful availment makes the exercise of personal jurisdiction over Blue Cross plainly unreasonable and improper.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons stated herein, the Complaint should be dismissed in its entirety.

Respectfully submitted,

KINDERCARE LEARNING CENTERS, INC.,

By its attorneys,


/s/ Robert P. Morris
Robert P. Joy (BBO #254820)
Robert P. Morris (BBO #546052)
MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, MA  02108
617-523-6666 (tel)
617-367-3125 (fax)


BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OF OREGON

By their attorneys,


/s/ Russell Beck
Russell Beck (BBO No. 561031)
Erica Templeton Spencer (BBO No. 651967)
EPSTEIN BECKER & GREEN, P.C.
111 Huntington Avenue
Boston, MA  02199
617-342-4000 (tel)
617-342-4001 (fax)

Dated:  September 3, 2004