UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHILDREN'S HOSPITAL CORP.,<br><br>       Plaintiff,<br><br>vs.<br><br>KINDERCARE LEARNING CENTERS, INC., BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., and REGENCE BLUE CROSS BLUE SHIELD OF OREGON,<br><br>       Defendants | Civ. A. No. 04-11676-PBS |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

INTRODUCTION

The defendants in this case induced Children's Hospital to provide more than $1 million in services to a seriously ill newborn by falsely representing to the Hospital that the infant's mother was covered under her employer's health insurance plan. In response to the Hospital's claims for fraud, negligent misrepresentation, breach of contract, promissory estoppel, and unfair or deceptive trade practices, the defendants removed the case to this Court and seek to have the claims dismissed on the grounds that ERISA § 514(a) preempts them. In summary, their position is that the Hospital has no remedy. The Hospital's principal position, set out in its memorandum in support of its motion to remand, is that its claims are not completely preempted, and thus that this Court lacks subject matter jurisdiction and must remand the case. The Hospital also contends, and demonstrates below, that on the merits, § 514(a) does not preempt its claims. Last, the Hospital refutes the argument advanced by Regence Blue Cross Blue Shield of Oregon that the Court lacks personal jurisdiction as to it.

FACTS

Baby Girl D.[1] was born with serious health problems at Hartford Hospital in Hartford, Connecticut on August 19, 2003. (Compl. ¶ 11). She was transferred and admitted to Children's Hospital ("the Hospital") on August 20. (Compl. ¶ 11). Her mother, Jane Doe, was an employee of Kindercare Learning Centers, Inc. ("Kindercare"). (Compl. ¶ 8). Kindercare sponsors the Kindercare Learning Centers, Inc. Employee Benefit Plan ("the Plan"), under which employee participants and their dependents are eligible for health benefits. (Compl. ¶ 5). Regence Blue Cross Blue Shield of Oregon ("BCOR") administers the Plan but is not the insurer; rather, Kindercare is a self-insurer. (Compl. ¶ 5).

Upon her daughter's admission, Mrs. Doe told the hospital that she was insured by BCOR. (Compl. ¶ 12). From August 25 on, agents or employees of BCOR repeatedly represented to the hospital that Mrs. Doe's policy was "active," that she was insured, and that the hospital would have "no problem" in securing reimbursement for services rendered. (Compl. ¶¶ 12, 13, 15-22; Milano Decl. ¶¶ 3-11).[2]

The total cost of the services the Hospital provided to Baby Girl D. was $1,084,859.21. (Compl. ¶ 55). Moreover, Baby Girl D.'s physicians requested that upon her discharge, she receive certain post-discharge services that would add to the total cost of her care. (Compl. ¶ 26).

Ultimately, Kindercare, BCOR, and Blue Cross Blue Shield of Massachusetts, Inc. ("BCMA") refused to pay for any of the services that the Hospital provided to Baby Girl D. in reliance on their repeated representations of coverage. (Compl. ¶ 35).[3] They took the position

---

[1] Children's Hospital refers to the patient whose care is at issue in this case and to her mother by pseudonyms in order to preserve their privacy. Their identities are irrelevant to the instant motion.
[2] The Declaration of Leah Milano is being filed herewith.
[3] BCMA has a Hospital Services Agreement with the Hospital pursuant to which it promised to reimburse the Hospital for urgent medical care provided to out-of-state members of other Blue Cross licensees such as BCOR. (Compl. ¶ 7). BCOR and BCMA are parties to a reciprocity agreement pursuant to which BCMA is required to facilitate provision of services to BCOR members. (Compl. ¶ 6).

that Mrs. Doe had not timely paid her premiums. (Compl. ¶ 31). Indeed, Kindercare took steps to insure that Mrs. Doe would be unable to restore her eligibility for coverage and that it would therefore escape any liability to her or the Hospital under the terms of the Plan. For instance, Kindercare offered to allow Mrs. Doe to pay her premiums by December 18, 2003 in order to maintain her coverage after December 1. (Compl. ¶ 29). But when the Hospital offered on December 18 to facilitate this payment by making a wire transfer, Kindercare, acting in bad faith in an attempt to avoid the risk it undertook by self-insuring, insisted on receiving a check in hand by the close of business that day—a physical impossibility, given that its offices are located in Oregon. (Compl. ¶ 31). Kindercare also refused to accept Mrs. Doe's offer to pay using a friend's credit card (with the friend's permission). (Compl. ¶ 32). To date, the Hospital has received no payments from any of the defendants.

PRIOR PROCEEDINGS

The Hospital commenced this action in the Suffolk County Superior Court on July 6, 2004. The counts were for fraud, negligent misrepresentation, promissory estoppel, breach of contract, account annexed, and violations of G.L. c. 93A, § 2.

The defendants removed the action to this Court on July 28, arguing that the Hospital's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Hospital has moved to remand on the grounds that the Court lacks subject matter jurisdiction. The defendants moved to dismiss on the grounds that ERISA § 514(a) preempts all of the Hospital's claims.

ARGUMENT

The Hospital's memorandum in support of its motion to remand focused on the question of complete preemption, i.e., whether its claims "fall[] within the scope of ERISA § 502(a),"

Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999), such that this Court has jurisdiction notwithstanding the well-pleaded complaint rule. This memorandum focuses on the question of ordinary preemption, i.e., whether the Hospital's claims "relate to" an employee benefit plan, such that ERISA § 514(a) preempts the claims.

A.  The Great Weight Of Authority Rejects Preemption In Misrepresentation of Coverage Cases.

The cases nearly unanimously make it clear that misrepresentation of coverage claims are not subject to ordinary preemption. The defendants do not even address the important cases in their brief, let alone attempt to come to grips with them. The seminal case is Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990). There, the employer, Noffs, provided employees with health coverage after thirty days of employment. Echols was an employee. His wife sought treatment at the hospital. The hospital telephoned Noffs and verified coverage. The hospital relied on this assurance and treated Echols's wife. Northbrook, which administered the plan, refused to pay because Echols had not worked for thirty days and was therefore ineligible for benefits. The hospital sued for breach of contract, negligent misrepresentation, estoppel, and violations of Texas's unfair trade practices statute. Northbrook removed the case and moved for summary judgment.[4] The hospital moved to remand. The district court dismissed the claims for breach of contract, which were asserted as Echols's assignee, but also dismissed the unfair trade practices claim. It held, however, that the claims for misrepresentation and estoppel were not preempted. It then remanded the pendent state law claims. The hospital appealed.

On appeal, the court affirmed the dismissal of the assigned breach of contract claim. It reversed, however, the dismissal of the unfair trade practices claim and remanded with

---

[4] Removal was clearly proper, because in that case, unlike this case, the hospital was asserting some claims as assignee of Echols and his wife. In this case, the Hospital asserts no claims as assignee.

4

instructions to remand it to state court. The basis for its decision was its finding that the claim did not "relate to" an ERISA plan within the meaning of § 514(a). It rejected a simple reading of the words "relate to," since "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Id. at 244 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)). Instead, it focused on two factors: (1) whether the state law claims "address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan;" and (2) whether the claims "directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." Id. at 245.

> On the first point, the court pointed to the "commercial realities" of the situation:
>
> If a provider believes that a patient may be covered under a health care plan, it is customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further ado. … [W]hen an insurance company or its agent … verifies coverage to a third-party provider, the insurer should recognize the commercial implications to the provider of its assurances.

Id. at 246. In light of these realities, "the only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan." Id. This is "a classically important state interest," id., and regardless of the outcome of a state law claim for misrepresentation, promissory or estoppel, or the like, "a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan." Id. Moreover, a ruling against the provider would make providers "understandably reluctant to accept the risk of non-payment" and encourage them to "require up-front payment by beneficiaries," thus "directly defeat[ing]" the purpose of Congress in enacting

ERISA, namely to "protecting the interests of employees and their beneficiaries in employee benefit plans." Id. at 247-48.

The court also rejected the argument that ERISA preemption applied because the measure of the hospital's damage would turn in part on the benefits it would have received under the plan had there been no misrepresentation of coverage. It held that the relationship of the damages to the plan was merely "incidental" and "unrelated to the [participant's] actual right to benefits under the plan." It also reasoned that "a one-time recovery … would not affect the on-going administration or obligations of an ERISA plan …" Id. at 247.[5]

On the second factor, the court likened ERISA to a Congressionally-struck "bargain" between employees and the ERISA entities—employers, plans, and fiduciaries. "Plaintiffs and employees similarly situated receive the many protections of ERISA in exchange for certain rights to sue under previous federal and state law. Congress has decided that they are better off for the bargain." Id. at 249 (quoting Williams v. Caterpillar, Inc., 720 F.Supp. 148, 152 (N.D. Cal. 1989), aff'd, 944 F.2d 658 (9th Cir. 1991)). "Simply put," however, health care providers "were not a party to this bargain." Id. Congress could not have intended preemption to

> shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect … the ongoing administration of the plan.

Id. at 250.

Several circuits have followed Memorial Hospital. See In Home Health, Inc. v. Prudential Ins. Co. of Am., 101 F.3d 600 (8th Cir. 1996); The Meadows v. Employers Health Ins., 47 F.3d 1006 (9th Cir. 1995); Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994);

---

[5] This disposes of the defendants' argument (Mem. at 10-11) that the claims are preempted because the calculation of damages turns on the Plan's provisions to some extent. In any event, the Hospital's damages can be limited only by an agreement to which it is a party, such as its Hospital Services Agreement with BCMA (which provides for a discount off the Hospital's usual charges), not by the Plan, to which the Hospital is a stranger.

6

Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc., 944 F.2d 752 (10th Cir. 1991).[6] One circuit, the Sixth, has held to the contrary, though in a fractured ruling that produced three opinions, one of them a dissent. See Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991). Because neither the Supreme Court nor the First Circuit has ruled on this issue, it is important to understand why the rationale of Cromwell must fail.

In Cromwell, the court's opinion notes, as the defendants here note in their brief, that the phrase "relates to," as used in § 514, is "given broad meaning." Id. at 1275. But in essence, the court decided that the provider's claims "related to" the plan solely because the plan was potentially liable for damages:

> Appellants' complaint alleged promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith as grounds for the recovery of benefits from the … plan for health care services rendered to the [participant]. Thus, appellants' state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan. Clearly, appellants' claims are preempted by ERISA.

Id. at 1276. In his concurrence, Judge Surheinrich did identify some effects that the provider's state law claims might have on the plan: fewer funds will be available to pay the claims of other beneficiaries; the payment of an award will require actuarial adjustments since the plan will not have anticipated the claim in its projections; and inconsistent state laws may subject the plan to increased costs of administration. See id. at 1279 (Surheinrich, J., concurring). Under the applicable precedents, however, none of these effects warrant a holding that a provider claim is

---

[6] District courts in other circuits and state courts have done likewise. See Vencor Hosps. Ltd. P'ship v. Aetna U.S. Healthcare, Inc., 26 Employee Benefits Cas. (BNA) 2224 (S.D. Ind. 2001); Drs. Reichmister, Becker, Smulyan & Keehn, P.A. v. United Healthcare of the Mid-Atlantic, Inc., 93 F.Supp.2d 618 (D. Md. 2000); National Rehab. Hosp. v. Manpower Int'l, Inc., 3 F.Supp.2d 1457 (D.D.C. 1998); Rehabilitation Inst. of Chi. v. Group Adm'rs, Ltd., 844 F.Supp. 1275 (N.D. Ill. 1994); Gaston Mem. Hosp. Home Health Servs., Inc. v. Bridgestone / Firestone, Inc., 830 F.Supp. 287 (W.D.N.C. 1993); Beth Israel Med. Ctr. v. Sciuto, Pens. Plan Guide (CCH) ¶ 23883A (S.D.N.Y. 1993); Weiser v. United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund, 653 N.E.2d 51 (Ill. App. Ct. 1995); Brookwood Med. Ctr. v. Celtic Life Ins. Co., 637 So.2d 1385 (Ala. Civ. App. 1994); Faith Hosp. Ass'n v. Blue Cross & Blue Shield of Mo., 857 S.W.2d 352 (Mo. Ct. App. 1993); Hermann Hosp. v. Aetna Life Ins. Co., 803 S.W. 2d 351 (Tex. App. 1990).

"related to" an ERISA plan for preemption purposes. "Neither the possibility of a one-time payment in the future, nor the act of making such a payment, in any way creates the potential for the type of conflicting regulation of benefit plans that ERISA pre-emption was intended to prevent." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 14 (1987).[7] Thus Cromwell fails to identify any impact on a plan that will be sufficient, in light of Fort Halifax, to trigger preemption.

B.    The Charlton Case Is Not Good Law.

Another judge of this Court cited Cromwell in Charlton Mem. Hosp. v. Foxboro Co., 818 F.Supp. 456 (D. Mass. 1993) (per Bowler, M.J.), a misrepresentation of coverage case that the defendants cite in their brief. There, the hospital sued the insurer as assignee of the participant and under the plan itself. It also asserted a claim of promissory estoppel and a claim under G.L. c. 93A. The Court cited Cromwell in support of its holding that the hospital's claim for multiple damages under c. 93A (but apparently not the c. 93A claim itself, nor the promissory estoppel claim) was preempted. The court reasoned, somewhat tautologically:

> [The hospital's] chapter 93A claim closely relates to the plan itself inasmuch as the alleged misrepresentation involves an alleged nonpayment of medical services rendered in accordance with the plan. Such a claim relates directly to the administration of the plan and [the insurer's] alleged promise to pay benefits thereunder.

Id. at 461. It also summarily dismissed the distinction between a third-party provider's claim and the claim of a beneficiary or participant: "Nor, in light of the character of the misrepresentations at issue, does the fact that [the hospital] brings this action as a third party health care provider alter this court's view." Id.

Charlton Memorial adds nothing to the analysis in Cromwell, and it is wrongly decided for the same reasons: it fails to identify a relationship between the state law claims and the

---

[7] Neither Cromwell nor Charlton Memorial, a case discussed infra, even cite Fort Halifax.

8

ERISA plan that is anything more than tangential or incidental, and it fails to take into account the policies of ERISA and the commercial realities of the health care industry that the court so carefully considered in Memorial Hospital.[8]

C.  The Defendants Misconstrue The Hospital's Claim.

Running throughout the defendants' brief is the misleading suggestion that the Hospital's claim is essentially a claim for benefits under the Plan. They rely principally on Mayeaux v. Louisiana Health Servs. & Indem. Co., 376 F.3d 420 (5th Cir. 2004), and Carlo v. Reed Rolled Die Co., 49 F.3d 790 (1st Cir. 1995), to make this point. Their reliance on these cases shows that they fundamentally mischaracterize the Hospital's claim.

In Mayeaux, a plan participant and her physician argued, in substance, that her insurer had wrongly decided that a particular treatment was experimental or investigatory and thus not within the scope of the plan's coverage. This is, as the court recognized, a clear case for preemption. The central distinction between Mayeaux and this case is that the Hospital is not alleging any claim on behalf of Mrs. Doe under the Plan. Indeed, the Hospital's case as pleaded in the complaint presumes that the defendants were correct when they asserted, prior to this litigation, that Mrs. Doe was not entitled to benefits. The Hospital's claims would be precisely the same if the defendants had simply invented a non-existent plan and told the Hospital that Mrs. Doe was covered under it.[9] The Hospital's injury resulted from its justified reliance on the defendants' misrepresentations concerning the existence of coverage, not from the defendants' interpretation of the Plan, right or wrong, and regardless whether coverage actually existed.

---

[8] Of course, in any case Charlton Memorial only holds that multiple damages awards are preempted, not that c. 93A claims or other state law claims themselves are preempted.

[9] For this reason, the defendants' reliance on Vartanian v. Monsanto Co., 14 F.3d 697 (1st Cir. 1994), is inapt. In Vartanian, the common law claims were preempted because in order to prevail on them, the plaintiff would have had to plead and prove the existence of an ERISA plan. See id. at 700. Likewise, in Utility Workers Local 369 v. NSTAR Elec. & Gas Corp., 317 F.Supp.2d 69 (D. Mass. 2004), the claim was that the defendant had falsely told participants under an old ERISA plan that their benefits under a new ERISA plan would "not change," a representation that clearly depends on interpretation of the plans themselves.

After refusing in toto to reimburse the Hospital, the defendants presumably do not argue now that perhaps Mrs. Doe had coverage after all. Thus the defendants' argument (Mem. at 10) that the claims relate to the Plan because it is impossible to know whether Mrs. Doe is covered without referring to the Plan is puzzling, if not foolish. The Hospital concedes for purposes of this motion that Mrs. Doe was not covered, so there is no interpretive issue here.

Carlo comes closer to the mark, but again fails to hit it. In Carlo, the allegation was that an employer had negligently over-represented the amount of benefits an employee would receive upon early retirement and had promised him a higher amount than the Plan provided. First, as in Mayeaux, there was no dispute that the plaintiff was entitled to some benefits; the plaintiff's essential claim was that he was entitled to more benefits than the plan administrator was willing to provide. Second, in Carlo the participant himself asserts the claim. Perhaps if the defendants in the instant case had told Mrs. Doe that she was covered and she, relying on that representation, had obtained expensive medical treatment, she would have a preempted claim for misrepresentation. Here, though, it is the Hospital that seeks relief, and as the court pointed out in Memorial Hospital, health care providers are simply not parties to the ERISA bargain.

D.    The Court Has Personal Jurisdiction Over BCOR.

BCOR argues that the Court lacks personal jurisdiction over it because it did not purposefully avail itself of the privilege of conducting activities in Massachusetts. This argument has no merit.

BCOR does not argue that jurisdiction is improper under the long-arm statute, G.L. c. 223A, § 3. Instead, BCOR argues that the exercise of jurisdiction in this case would be inconsistent with the Due Process Clause. In particular, BCOR argues that it has not purposefully availed itself of the privilege of conducting business in Massachusetts. (Mem. at 14). BCOR

makes no argument concerning the other prongs of the applicable test, namely relatedness and reasonableness. See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).

On a motion to dismiss for lack of personal jurisdiction, assuming the Court employs the prima facie method, the plaintiff need only proffer "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Daynard v. Ness, Mottley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir.), cert. denied sub nom. Scruggs v. Daynard, 537 U.S. 1029 (2002).

In short, BCOR argues that its contacts with Massachusetts were "random" and "isolated." (Mem. at 15). In fact, its contacts with Massachusetts were regular and extensive. It had a reciprocity agreement with BCMA pursuant to which BCMA agreed to facilitate the provision of services for BCOR members in Massachusetts. In this case, the Complaint alleges several instances over a period of approximately four months in which BCOR (or BCMA, acting as its agent)[10] confirmed that Mrs. Doe was covered. Some of these communications (for example, Ms. Lloyd's second call of September 11, 2003, alleged in ¶ 14 of the Complaint, or Ms. Lloyd's call of September 23, 2003, alleged in ¶ 17) were initiated by BCOR. The declaration of Leah Milano, which is being filed herewith, verifies that several of these communications occurred as alleged in the Complaint.

Moreover, the cases BCOR cites are not on point. Here the principal contention is not, as in Sawtelle v. Farrell, 70 F.3d 1381 (1st Cir. 1995), that the out-of-state defendants negligently provided legal advice to their clients in the forum state. See also Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7 (1st Cir. 1986) (legal malpractice by out-of-state attorney).

---

[10] For purposes of personal jurisdiction, the authorized acts of an agent may be imputed to the principal. See Daynard, 290 F.3d at 55; Ganis Corp. of Cal. v. Jackson, 635 F.Supp. 311, 315 (D. Mass. 1986), aff'd, 822 F.2d 194 (1st Cir. 1987).

Nor is the issue whether negotiations between in-state and out-of-state parties to form a contractual relationship, the performance of the in-state party's contractual obligations in Massachusetts, or the out-of-state party's attendance at Massachusetts trade shows are sufficient to support jurisdiction. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 113-14 (1st Cir. 1997).

Rather, the issue is whether multiple fraudulent misrepresentations to the plaintiff in the forum state by an out-of-state defendant are sufficient for personal jurisdiction to attach. The rule in the First Circuit is:

> Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st Cir. 1986) (citing Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)) (citation and internal quotation marks omitted).[11]

In light of Murphy, the existence of personal jurisdiction here is as clear as it can be. Therefore, BCOR's motion to dismiss on these grounds must be denied.

---

[11] The First Circuit has suggested Murphy will not be extended to torts other than misrepresentation, see, e.g., Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 205 (1st Cir. 1994), but Murphy remains good law.

12

## CONCLUSION

For the foregoing reasons, the Court should deny the defendants' motion to dismiss.

        Respectfully submitted,

        CHILDREN'S HOSPITAL CORP.

        By its attorneys:

        /s/ Theodore J. Folkman
        John D. Hanify (BBO No. 219880)
        Theodore J. Folkman (BBO No. 647642)
        HANIFY & KING, P.C.
        One Beacon Street
        Boston, Mass. 02108
        (617) 423-0400

Dated: September 17, 2004

411345